Guillermo Silva, recurrente, *v.* Comisión Industrial de Puerto Rico, Etc., demandada; y Ramón Montaner, Administrador del Fondo del Seguro del Estado y Compañía Azucarera del Camuy, Inc., recurridos.

Núm. 163.—*Sometido:* Febrero 13, 1939. *Resuelto:* Febrero 25, 1939.

*V. Brunet* y *Miguel A. Casiano,* abogados del recurrente; *M. León Parra,* abogado de la demandada; *Víctor A. Vidal González,* abogado del Fondo del Estado; *F. Susoni, Jr.,* abogado del patrono.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

La sección 6 de la Ley de Compensaciones por Accidentes del Trabajo (Leyes de 1935, (1) págs. 251, 277, 281) autoriza al Administrador del Fondo del Seguro del Estado a supervisar la investigación de las reclamaciones que se entablen contra dicho Fondo, mas dispone que "no tendrá ingerencia alguna ni autoridad sobre los miembros de la Comisión Industrial ni de aquellas personas nombradas como auxiliares de dicha comisión para llevar a cabo los deberes encomendádosle a la misma."

La sección 15 lee así:

"Artículo 15.—En el caso de que ocurriese un accidente a un obrero o empleado cuando trabajare para un patrono que en violación de la ley no estuviere asegurado, el Administrador del Fondo del Estado determinará la compensación que proceda más los gastos en el caso y certificará su decisión al Tesorero de Puerto Rico, quien cobrará al patrono dicha compensación y gastos, y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono; *Disponiéndose,* que dicha compensación y gastos se declaran gravámenes preferentes a toda otra carga o gravamen por contribuciones o por cualquier otro concepto, con excepción de los créditos hipotecarios y los créditos refaccionarios y de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente que pese sobre la propiedad del patrono al trabarse embargo en garantía de

tal compensación y gastos; *Disponiéndose, además,* que la Comisión dará, tanto al patrono como al obrero o empleado, en el caso, oportunidad de ser oídos y defenderse, ajustándose en lo posible a las prácticas observadas en las cortes de distrito; *Y disponiéndose, también,* que, citadas las partes por el medio que la Comisión adopte, si éstas o cualquiera de ellas no concurriesen para ser oídas y defenderse, se entenderá que éstas renuncian a su derecho, y la Comisión podrá fallar el caso en rebeldía sin más demora.

"Si cualquier patrono que emplee cuatro (4) o más obreros o empleados dejare de asegurar el pago de compensaciones por accidentes del trabajo de acuerdo con esta Ley, cualquier obrero perjudicado o sus beneficiarios pueden proceder contra tal patrono radicando una petición para compensación ante la Comisión Industrial, y, además, pueden ejercitar una acción contra el patrono por daños y perjuicios, lo mismo que si esta Ley no fuera aplicable, y tendrán derecho en tal acción, sin prestar fianza, a embargar la propiedad del patrono por el montante que determinare la corte para asegurar el pago de la decisión que recayere, siempre que la corte estime que hay una justa causa de acción después del examen de la demanda, la cual deberá ser jurada. Tal embargo incluirá honorarios de abogado, que serán fijados por la corte, y el embargo se mantendrá hasta que el caso haya sido fallado y satisfecho el importe de la sentencia. Si como resultado de tal acción por daños y perjuicios recayere un fallo contra el patrono, en exceso de la compensación fijada por esta Ley, la compensación fijada, si fuere pagada o si fuere garantizada con garantía aprobada por la corte, se deducirá del fallo.

"En tal procedimiento no constituirá defensa para el patrono que el obrero o empleado fué culpable de negligencia contributoria o que asumió el riesgo de la lesión o que la lesión fué causada por la negligencia de un contratista o subcontratista independiente, a menos que el contratista o subcontratista independiente se hubiere asegurado con arreglo a las disposiciones de esta ley.

"No será válido ningún contrato celebrado entre un patrono y un obrero o empleado que se proponga permitir el uso de cualquiera de estas defensas."

Guillermo Silva era el padre de Miguel A. Silva, empleado fallecido de La Compañía Azucarera del Camuy, Inc. Él radicó ante la Comisión Industrial una solicitud de indemnización en la que alegaba que la querellada no estaba asegurada. La comisión solicitó del Administrador del Fondo del

Seguro del Estado información en torno a si el patrono estaba asegurado. En 27 de octubre, 1938, el Administrador comunicó a la comisión lo siguiente:

El accidente fué informado por el patrono Soller Sugar Co., Inc.; con posterioridad a' este informe se ha alegado que Miguel A. Silva trabajaba con La Compañía Azucarera del Camuy, Inc.; en los archivos del Administrador figura una póliza de seguro a 'nombre de Soller Sugar Co., Inc., y/o La Compañía Azucarera del Camuy, Inc.; el Administrador tenía el caso bajo su consideración con el fin de determinar cuál es el verdadero patrono en el caso y de resultar que lo es La Compañía Azucarera del Camuy, Inc., si estaba o no asegurada a la fecha del accidente.

La comisión suspendió ulteriores procedimientos hasta que el Administrador le informara del resultado de su investigación. El peticionario solicitó se expidiera una citación en la forma provista por la sección 15 y que se señalara el caso para vista. La comisión concedió cinco días al Administrador para presentar un informe; y le notificó que de no radicarlo se señalaría el caso para vista.

El Administrador remitió a la comisión copia de su decisión fechada el 9 de diciembre, 1938. En ésta se hacía constar primeramente una decisión anterior fechada el 23 de septiembre, 1938, en que la compensación correspondiente a Guillermo Silva por la muerte de Miguel Silva—como empleado de Soller Sugar Co. y/o Compañía Azucarera del Camuy—se fijaba en la suma de $2,703.72. Entonces seguía diciendo que: Guillermo Silva, alegando que Miguel Silva había sido empleado de La Compañía Azucarera del Camuy, que no estaba asegurada, había solicitado se dejara en suspenso la resolución de 23 de septiembre, 1938, en tanto se resolvía el *status* del patrono y se declarara que éste no estaba asegurado. A esta solicitud sigue una orden de suspensión fechada el 22 de octubre. Entonces siguen conclusiones al efecto de que:

Soller Sugar Co., Inc., es una corporación con domicilio en Arecibo y se dedica a la plantación de cañas y elaboración de azúcar;

en 31 de agosto, 1935, dicha corporación rindió su declaración de jornales y sueldos para el año 1935-36 y posteriormente pagó la prima o cuota anual correspondiente; igual hizo para el año 1936-37; en junio 30, 1937, al presentar su declaración de sueldos y jornales para el año 1937-38, dicho estado contenía una nota que indicaba que en la póliza para el nuevo año debería figurar Soller Sugar Co., Inc., y/o Compañía Azucarera del Camuy; expresaba la intención de gastar durante el año 1937-38 la suma de dos mil dólares en la erección de edificios para la nueva planta azucarera en Camuy y quinientos dólares en la explanación para ferrocarriles; se pagaron las primas por concepto de jornales y sueldos de una y otra corporación y por un error de la división de seguros se expidió una póliza en la misma forma que había sido rendido el informe de sueldos y jornales, o sea "Soller Sugar Co., Inc. y/o Compañía Azucarera del Camuy"; Soller Sugar Co., Inc. y La Compañía Azucarera del Camuy son dos corporaciones distintas aunque tienen la misma junta de directores; Miguel A. Silva a la fecha en que ocurrió el accidente que le ocasionó la muerte era empleado de La Compañía Azucarera del Camuy; esta corporación—habiendo presentado su informe de jornales y sueldos para el año 1937-38, aunque por error lo hizo conjuntamente con la otra corporación Soller Sugar Co. y pagado su cuota anual o prima completa para el referido año— estaba asegurada de conformidad con las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo.

Por éstas y otras razones sobre el *status* de Guillermo Silva como beneficiario y por las circunstancias en que Miguel Silva halló la muerte, el Administrador nuevamente concedió la suma de $2,703.72 de compensación.

El 21 de diciembre, 1938, la Comisión Industrial resolvió que—después de la conclusión a que llegó el Administrador del Fondo del Seguro del Estado al efecto de que el patrono estaba asegurado—cualquier actuación ulterior de la Comisión sería superflua; y que—en ausencia de cualquier alegación al efecto de que la compensación concedida era inadecuada en su cuantía—no incumbía a la comisión intervenir. Posteriormente la comisión declaró sin lugar una moción en que se solicitaba se reconsiderara su resolución.

En la teoría de que el patrono no había estado asegurado, el peticionario trataba de recobrar tres mil dólares en vez

de los $2,703.72 concedidos por el Administrador basado en conclusiones contrarias a la teoría del caso presentada por el peticionario. Independientemente de cualquier cuestión relativa a los méritos de la conclusión a que llegó el Administrador del Fondo del Seguro del Estado, al peticionario, a nuestro juicio, debió habérsele dado la oportunidad de ser oído y de presentar ante la comisión cualquier prueba o argumento que tuviera en apoyo de su reclamación, de conformidad con las disposiciones de la sección 15 supra de la Ley de Compensaciones por Accidentes del Trabajo.

*Las dos resoluciones de la comisión deben ser revocadas y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*