8

CENTRAL CAMBALACHE, INC., promovente, *v.* RAFAEL J. CORDERO, ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, y M. LEÓN PARRA, JUAN M. HERRERO y FRANCISCO PAZ GRANELA, miembros de la COMISIÓN INDUSTRIAL DE PUERTO RICO, demandados.

Núm. 25.—*Sometido:* Junio 20, 1942. *Resuelto:* Noviembre 4, 1942.

*E. Pérez Casalduc,* abogado de la promovente; *Hon. Procurador General George A. Malcolm, G. Benítez Gautier, Procurador General Auxiliar, y G. Atiles Moréu, A. de Jesús Matos y J. Correa Suárez,* asesores legales los tres últimos del Fondo del Seguro del Estado, abogados del Administrador de dicho Fondo.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La demandante invocó la jurisdicción original de este tribunal, interesando la expedición de un auto de *injunction* dirigido contra el Administrador del Fondo del Seguro del Estado y la Comisión Industrial, ordenándoles que se abstengan de considerar a la demandante como patrono no asegurado en relación con los accidentes del trabajo acaecidos a sus obreros en el período comprendido entre el primero de julio y el 15 de diciembre de 1941. Alega la demandante que con anterioridad al 15 de julio de 1941 presentó al Administrador el estado por duplicado requerido por el artículo 27 de la Ley núm. 45 de 1935 ((1) pág. 251), contentivo del número de trabajadores empleados, clase de ocupación o industria a que fueron dedicados, y la cantidad total de jornales pagádosles durante el año económico anterior. Que el 28 de octubre de 1941 la demandante recibió una comunicación del Administrador notificándole la liquidación preliminar para el año económico 1941–42, montante a $9,543.72 semestrales, a la vez que fijaba la fecha del pago del primer semestre para en o antes del 7 de noviembre de 1941. Que dicha comunicación fué extendida en el impreso oficial preparado al efecto y que la parte de dicho impreso concerniente a la "Liquidación Final" se hallaba en blanco. Que en vista de esta última circunstancia, la demandante se dirigió por escrito al Administrador, llamando su atención sobre el particular y solicitando le prorrogase el plazo del pago de la liquidación preliminar, o sea la prima correspondiente al primer semestre, hasta tanto se determinase en definitiva el montante de la liquidación final del año anterior a través de la investigación que los empleados del Fondo estaban entonces practicando en los libros de la demandante. Que el Administrador contestó que consideraba innecesaria tal prórroga, toda vez que la demandante recibiría la "Liquidación Final" antes de expirar el plazo por él fijado, o sea

el 7 de noviembre de 1941, y los treinta días de gracia con-
cedidos por la ley, que vencerían el 7 de diciembre siguiente,
agregando la demandante que en dicha comunicación el Ad-
ministrador nada decía con respecto al pago de la prima
preliminar en el caso de que a su vencimiento y el de los
treinta días de gracia, no se le hubiese rendido la refe-
rida liquidación final. Que guiada por los términos de la
aludida comunicación la demandante estimó que no venía
obligada a pagar el importe de la prima correspondiente al
primer semestre mientras no recibiese la liquidación final,
y confió en que la recibiría antes del 7 de diciembre de 1941.
Que transcurrido dicho plazo sin recibirla, se dirigió por
escrito al Administrador inquiriendo las razones por las
cuales no se la habían enviado, contestando éste por tele-
grama cursado en San Juan el 13 de diciembre de 1941, a
las dos de la tarde. En dicho telegrama el Administrador
acusaba recibo de la carta del demandante y al propio tiempo
le hacía saber que los treinta días de gracia habían expirado
el 7 de diciembre y la requería para que inmediatamente
enviase la prima preliminar por hallarse su riesgo en des-
cubierto. Que el lunes 15 de diciembre verificó el pago y
que el administrador, sin tener en cuenta las expresadas
circunstancias, declaró a la demandante patrono no asegu-
rado en todos los casos de accidentes del trabajo acaecidos
desde el primero de julio hasta el 15 de diciembre de 1941,
y que con tal motivo la demandante fué citada y compareció
a la vista de algunos de dichos casos en la Comisión Indus-
trial. Que al dar principio a la vista, formuló oposición a
que se le considerase patrono no asegurado, y después de
recibir las pruebas y alegatos de la demandante y del Admi-
nistrador, se dictó la resolución de 22 de abril de 1942 soste-
niendo la contención de este último.

No interpuso la demandante recurso de revisión. En su
lugar y con fecha primero de mayo último, radicó la petición
de injunction que nos ocupa, en la que en adición a lo ya

expuesto, alegó las razones que tenía para invocar la juris-
dicción original de este Tribunal, lo inadecuado del remedio
de revisión, e invocó la procedencia del remedio de injunction,
basándose en que se evitaría así una multiplicidad de pleitos,
refiriéndose a los 200 ó 300 casos de accidentes del trabajo
que según ella habían ocurrido desde julio primero a diciem-
bre 15 de 1941, y de los cuales de otro modo tendría que
defenderse ante la Comisión Industrial.

Expedimos una orden para mostrar causa. Contestó el
Administrador aceptando los hechos esenciales de la petición
pero alegó a su vez que no era éste un caso apropiado para
invocar nuestra jurisdicción original; que la demanda no
aducía hechos constitutivos de causa de acción; y solicitó
además la eliminación de ciertos particulares de la demanda.
Oídas las partes, el caso quedó sometido a nuestra conside-
ración el 20 de junio último.

 Habida cuenta de nuestra jurisdicción exclusiva
para revisar las decisiones de la Comisión Industrial y con-
siderando que en ella están envueltos generalmente los inte-
reses de obreros o sus dependientes quienes por razón de
su pobreza necesitan que sus asuntos sean despachados den-
tro de la mayor brevedad que las circunstancias de cada caso
permitan, de proceder el recurso de injunction no vacilaría-
mos en convenir con la demandante en que podría en tal caso
invocarse nuestra jurisdicción original, evitando así la con-
siguiente dilación. [2] ¿Pero es que procede el injunction
en el presente caso? La demandante invoca el inciso 6 del
artículo 677 del Código de Enjuiciamiento Civil (ed. 1933)
dispositivo de que puede concederse un auto de injunction
"cuando la restricción fuera necesaria para impedir una
multiplicidad de procedimientos judiciales". Sin embargo,
es un principio fundamental de equidad tan antiguo como la
equidad misma, que no puede recurrirse a ella mientras
exista un recurso ordinario en ley que sea rápido, adecuado
y eficaz. [3] Nuestras decisiones son obligatorias para la

Comisión Industrial, y mientras no sean revocadas deberán servir de norma para la resolución de los casos pendientes ante ella. Siendo ello así, tenemos que asumir que la Comisión procederá correctamente y no se excederá de los límites que le ha fijado la ley. Así, pues, no dudamos que al resolver nosotros la cuestión en controversia dentro del procedimiento de revisión en cualquiera de los casos que motivaron la interposición de este recurso, la decisión así dictada constituiría un precedente obligatorio para la resolución de los 200 ó 300 casos que, según la demandante, penden contra ella en la Comisión Industrial. [4] Como se dijo en el caso de *Byrne* v. *Drain,* 127 Cal. 663, 668; 60 Pac. 433, para que pueda acudirse al remedio de injunction en evitación de multiplicidad de procedimientos, precisa que de la índole de la cuestión en controversia razonablemente surja que tendrá lugar la multiplicidad de pleitos si el injunction no fuese concedido. Siendo ello así, si dentro de las circunstancias que concurren en este caso, con toda probabilidad nuestra decisión dentro del procedimiento de revisión evitaría el peligro de la multiplicidad de procedimientos, ¿a qué recurrir para conjurarlo al recurso extraordinario de injunction, existiendo como existe en el de revisión prescrito por la ley, un remedio tan rápido, adecuado y eficaz como aquél?

■ Es cierto que dentro del procedimiento de revisión no podemos intervenir con las conclusiones de hecho a que hubiese llegado la Comisión, a menos que se trate de la apreciación de evidencia pericial o, claro está, cuando no exista prueba que sostenga tales conclusiones, porque aparte de que una decisión basada en tales conclusiones violaría la garantía constitucional del debido procedimiento de ley, el error así cometido no sería de hecho sino de derecho, como sostuvimos en *Montaner, Admor.* v. *Comisión Industrial,* 54 D.P.R. 722, 725. Empero, en el caso de autos no existe contención alguna en cuanto a los hechos. Además de admitirlos el Administrador, la evidencia que los sostiene es toda documental,

a saber: la comunicación del Administrador dejando la fecha para el pago de la prima correspondiente al primer semestre, y la fecha en que se verificó el pago de ésta, el 15 de diciembre de 1941, fecha que fué alegada por la propia demandante en la demanda de injunction y admitida por el Administrador. Pero es que aun existiendo conflicto en la evidencia, esa circunstancia no podría ser motivo para que expidiésemos el injunction solicitado. Es característico del procedimiento administrativo que las cuestiones de hecho no son revisables por los tribunales de justicia. Como dice el Dean Landis en su obra *The Administrative Process,* pág. 142, la verdadera razón por la cual no se permite la revisión judicial de las conclusiones de hecho a que llegaren en sus decisiones las juntas o tribunales administrativos consiste en que dada la pericia que se presume en los especialistas de que generalmente se componen tales juntas, puede confiarse en que están tan capacitados como los jueces para determinar las conclusiones de hecho, siempre que, desde luego, hayan seguido un procedimiento adecuado. Véanse el artículo del Profesor Roland Pennock titulado *"Judicial Control of Administrative Decisions",* y el del Profesor John M. Pfiffner, titulado *"The Development of Administrative Regulations",* publicados en la revista "The Annals of the American Academy of Political and Social Sciences" en el número correspondiente al mes de mayo de 1942, páginas 183 y 1, respectivamente.

Y por último, la norma para determinar lo que es un procedimiento adecuado nos la señala el Juez Brandeis al sostener en su opinión concurrente en el caso de *St. Joseph Stock Yards Co.* v. *U.S.,* 298 U.S. 38, 73, que la protección que la cláusula sobre el debido procedimiento de ley garantiza, no consiste en que la corte pueda revisar las conclusiones de hecho a que hubiere llegado el tribunal administrativo, sino en que no se llegue a ninguna conclusión sin antes haber dado a las partes interesadas la debida notificación y opor-

tunidad de ser oídas; que el procedimiento se conforme a los requisitos esenciales de un juicio justo e imparcial, y finalmente que el procedimiento se haya conducido de tal forma que ofrezca a una corte la oportunidad de determinar si el tribunal administrativo observó las reglas de ley y de procedimiento.

Es obvio que el procedimiento de revisión establecido por nuestra Ley de Compensaciones por Accidentes del Trabajo se ajusta al criterio enunciado por el Juez Brandeis.

*Procede declarar sin lugar la petición de injunction.*