CENTRAL CAMBALACHE, INC., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; FONDO DEL SEGURO DEL ESTADO, asegurador.

Núm. 263.—*Sometido:* Mayo 17, 1943. *Resuelto:* Septiembre 23, 1943.

*E. Pérez Casalduc,* abogado de la recurrente; *Hon. Procurador General Interino M. Rodríguez Ramos, G. Benítez Gautier, Procurador General Auxiliar,* y *Angel de Jesús Matos* y *Joaquín Correa Suárez,* abogados los dos últimos del Fondo del Seguro del Estado, abogados todos del Fondo mencionado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La cuestión envuelta en este caso está íntimamente relacionada con la decisión en el de *Central Cambalache Inc.* v. *Cordero, Administrador,* 61 D.P.R. 8. Los hechos pueden resumirse así: La ahora recurrente, con anterioridad al 15 de julio de 1941, presentó al Administrador del Fondo del Seguro del Estado el estado por duplicado requerido por el artículo 27 de la Ley núm. 45 de 1935 ((2) pág. 251), contentivo del número de trabajadores empleados, clase de ocupación o industria a que fueron dedicados, y la cantidad total de jornales pagados durante el año económico anterior. El 28 de octubre de 1941 la recurrente recibió una comunicación de dicho Administrador notificándole la liquidación preliminar para el año económico 1941–42, montante a $9,543.72 semestrales, y fijando la fecha del pago del primer semestre para en o antes del 7 de noviembre de 1941. Dicha comunicación fué extendida en el impreso oficial preparado al efecto, hallándose en blanco la parte del impreso concerniente a la "Liquidación Final". En vista de esa circunstancia, la recurrente solicitó por escrito del Administrador que le prorrogase el término del pago de la liquidación preliminar, o sea el de la prima del primer semestre, hasta tanto el Administrador determinase la liquidación del año anterior. Contestó

el Administrador que estimaba innecesaria tal prórroga, toda vez que la recurrente recibiría la liquidación 'final antes de expirar el plazo por él fijado, más los treinta días de gracia concedidos por ley, que vencerían el 7 de diciembre de 1941. Nada se decía en dicha comunicación con respecto al pago de la prima preliminar para el caso de que al vencimiento de los treinta días de gracia no se hubiese rendido por la recurrente la referida liquidación final. La recurrente, según alegó en la petición de *injunction* en el citado caso de *Central Cambalache v. Cordero, Administrador,* supra, interpretó que ella no venía obligada a pagar la prima preliminar mientras no recibiese la liquidación final y confió en que la recibiría antes del 7 de diciembre de 1941. Expirado dicho plazo sin recibirla, se dirigió al Administrador, inquiriendo las razones por las cuales no se le había enviado, contestando éste por telegrama que cursó en San Juan el 13 de diciembre de 1941, acusando recibo de su carta, notificándole que los treinta días de gracia habían vencido el 7 de diciembre y requiriéndole para que inmediatamente enviase su prima preliminar por hallarse su riesgo en descubierto. El 15 de diciembre la recurrente verificó el pago de la prima preliminar, no obstante lo cual el Administrador la declaró *patrono no asegurado en todos los casos de accidentes del trabajo acaecidos desde el primero de julio hasta el 15 de diciembre de 1941.* Con tal motivo la ahora recurrente fué citada y compareció a la vista de algunos de dichos casos en la Comisión Industrial y al darse principio a la audiencia, formuló oposición a que se le considerase *patrono no asegurado,* y después de recibir las pruebas y alegatos de la recurrente y del Administrador, la Comisión Industrial dictó resolución el 22 de abril de 1942 sosteniendo la contención del Administrador. La recurrente no solicitó reconsideración ni interpuso recurso de revisión contra la referida decisión de la Comisión Industrial; pero con fecha primero de mayo de 1942 radicó una petición de injunction en este tribunal, dirigida contra el Administrador del Fondo del Seguro del

Estado y la Comisión Industrial, para que se les ordenase que se abstuvieran de considerar a la ahora recurrente como *patrono no asegurado* en relación con los accidentes del trabajo acaecidos a sus obreros en el período comprendido entre el primero de julio y el 15 de diciembre de 1941.

En la petición de injunction alegó que de concederse dicho recurso, se evitaría una multiplicidad de pleitos, refiriéndose a los 200 ó 300 casos de accidentes del trabajo que según la entonces peticionaria habían ocurrido dentro del período indicado y de los cuales, de no concederse el injunction, tendría que defenderse ante la Comisión Industrial.

Oímos las partes y el 4 de noviembre de 1942 se dictó la decisión a que se hace referencia al principio de esta opinión, por la cual se declaró sin lugar la petición de injunction.

Contestando a la contención de la recurrente al efecto de que la expedición del auto de injunction evitaría multiplicidad de pleitos, dijimos entonces que nuestras decisiones son obligatorias para la Comisión Industrial y que mientras no sean revocadas, deberán servir de norma para la resolución de los casos pendientes ante ella, y que siendo ello así, teníamos que asumir que la Comisión procedería correctamente y no se excedería de los límites fijados por la ley, y agregamos: ''Así, pues, no dudamos que al resolver nosotros la cuestión en controversia dentro del procedimiento de revisión en cualquiera de los casos que motivaron la interposición de este recurso, la decisión así dictada constituiría un precedente obligatorio para la resolución de los 200 ó 300 casos que, según la demandante, penden contra ella en la Comisión Industrial. Como se dijo en el caso de *Byrne* v. *Drain,* 127 Cal. 663, 668, 60 Pac. 433, para que pueda acudirse al remedio de injunction en evitación de multiplicidad de procedimientos, precisa que de la índole de la cuestión en controversia razonablemente surja que tendrá lugar la multiplicidad de pleitos si el injunction no fuese concedido. Siendo ello así, si dentro de las circunstancias que concurren en este caso, con toda probabilidad nuestra decisión dentro del procedi-

miento de revisión evitaría el peligro de la multiplicidad de procedimientos, ¿a qué recurrir para conjurarlo al recurso extraordinario de injunction, existiendo como existe en el de revisión prescrito por la ley, un remedio tan rápido, adecuado y eficaz como aquél?''

Resolvimos además que las cuestiones envueltas en el caso de la recurrente, en el supuesto de que hubiesen venido a este tribunal mediante recurso de revisión, eran todas cuestiones de hecho con las cuales no podíamos intervenir, y terminamos sosteniendo que el recurso de revisión, tratándose de que la Comisión Industrial es un tribunal o junta administrativo, es adecuado y constitucional.

No hay duda alguna que la decisión de la Comisión Industrial de 22 de abril de 1942, declarando a la ahora recurrente patrono no asegurado, quedó firme por no haberse interpuesto contra ella recurso de revisión, toda vez que el de injunction a que hemos hecho referencia no prosperó.

Ello no obstante, la recurrente acudió nuevamente a la Comisión Industrial, apelando de la decisión del Administrador recaída en los 200 ó 300 casos a que se refirió en la petición de injunction, y promovió de nuevo la misma cuestión de si era o no patrono no asegurado. La Comisión declaró sin lugar los recursos, fundándose en que esa cuestión había sido resuelta por su citada decisión de 22 de abril de 1942, que era firme. Solicitó reconsideración, y al serle denegada presentó el recurso de revisión que nos ocupa.

En la resolución denegando la reconsideración, dictada el 26 de febrero de 1943, dijo la Comisión Industrial:

''En cuanto a que la Corte Suprema de Puerto Rico no ha pasado ni resuelto la cuestión sobre el *status* patronal de la querellante, únicamente deseamos expresar que la Corte Suprema de Puerto Rico resolvió declarando sin lugar la petición de injunction que interpusiera el patrono. Que las decisiones de la Corte Suprema son obligatorias para la Comisión Industrial es indiscutible. Que la Comisión Industrial procederá correctamente y no se excederá de los límites que le ha fijado la ley, ésta ha sido y es la norma de esta Co-

misión Industrial en todos los casos. Para concluir, repetimos que si después de haberse resuelto por la Comisión Industrial que el patrono no estaba asegurado entre el primero de julio al quince de diciembre de 1941, el Administrador del Fondo del Seguro del Estado al liquidar los casos de accidentes ocurridos dentro de ese período de término en que el patrono no estaba asegurado hubiese fijado alguna incapacidad, compensación o gastos en uno o varios casos, y que el patrono hubiese considerado que esa incapacidad, compensación o gastos no eran justos ni razonables y hubiese apelado ante la Comisión Industrial para demostrar que dicha incapacidad, compensación o gastos no eran justos ni razonables, la Comisión Industrial le hubiese dado al patrono la oportunidad de ser oído y defenderse. Pero el patrono lo que alega nuevamente es que estaba asegurado entre el primero de julio al quince de diciembre de 1941, y como ya sobre ese extremo se celebró una vista pública y el patrono tuvo amplia oportunidad de ser oído y defenderse, y la Comisión Industrial dictó resolución el 22 de abril de 1942, por tanto la Comisión Industrial RESUELVE que no ha lugar a la moción de reconsideración de febrero 8, 1943, en los casos C. I.—15006, C. I.—15007 y C. I.—15009, así como no ha lugar por los mismos fundamentos antes expuestos a la moción de reconsideración de febrero 8 de 1943 en los casos números C. I.—17828 al C. I. 17995 inclusives (168 casos), y se sostiene la resolución de la Comisión Industrial de abril 22 de 1942.''

La póliza que en el Fondo del Seguro del Estado adquiere el patrono asegurado es una y cubre todos los accidentes acaecidos durante el período de su vigencia. Pero cada accidente constituye un caso distinto de los demás. En cada uno de ellos existen tres entidades interesadas en la póliza, a saber: el Fondo del Seguro del Estado representado por su Administrador, como asegurador; el patrono, como asegurado; y el obrero o empleado, o sus dependientes, como beneficiarios. Reconociéndolo así, la Ley de Compensaciones por Accidentes del Trabajo en su artículo 15 prescribe que ''la Comisión dará, tanto al patrono como al obrero o empleado *en el caso*, oportunidad de ser oídos y defenderse, ajustándose en lo posible a las prácticas observadas en las cortes de distrito''. La recurrente tuvo la oportunidad de ser oída y defenderse en el caso que motivó la resolución de

la Comisión Industrial de 22 de abril de 1942. En cuanto a dicho caso concierne, la citada resolución puso fin a la controversia y constituye cosa juzgada. Pero no sucede lo mismo en lo que a los demás casos respecta. Para éstos la resolución de 22 de abril de 1942 no constituye cosa juzgada, sencillamente porque entre aquel caso y éstos no existe identidad entre las personas de los litigantes, ya que el obrero o empleado, o sus dependientes, son distintos en cada caso. Además, la cuestión en controversia no se refiere al estado civil de las personas o la validez o nulidad de una disposición testamentaria, únicos casos en que según el artículo 1204 del Código Civil la presunción de cosa juzgada es eficaz contra terceros, aunque no hubiesen litigado. Se ha dado el caso de declararse a un patrono patrono asegurado y ello no obstante los dependientes del obrero o empleado, por estimarlo más conveniente a sus intereses, han solicitado se deje sin efecto la decisión y se les permita probar que el patrono en realidad era patrono no asegurado. *Silva* v. *Comisión Industrial*, 54 D.P.R. 385. Esto no implica que revisado un caso por este Tribunal y establecida la regla aplicable para determinar el *status* del patrono, la norma así establecida no haya de ser seguida por la Comisión, ni debemos suponer que las partes han de ser temerarias insistiendo en levantar cuestiones ya resueltas por la jurisprudencia, si bien no podría impedírseles que lo hicieran por ser un derecho que la ley concede ''tanto al patrono como al obrero *en el caso*''.

Por las razones expuestas, *procede declarar con lugar el recurso, revocar la decisión recurrida el 4 de febrero de 1942, y devolver a la Comisión Industrial los casos objeto de dicha decisión para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Snyder no intervino.