COMPAÑÍA POPULAR DE TRANSPORTE, INC., y LÍNEA FÉRREA DEL OESTE, INC., demandantes y apeladas, *v.* LUIS SUÁREZ, DOMINGO ANTONIO ROMERO y ANTONIO ROMERO, haciendo negocios bajo el nombre de "LÍNEA ROMERO", demandados y apelantes.

Núm. 7298.—*Sometido:* Junio 18, 1937. *Resuelto:* Noviembre 5, 1937.

*R. Cuevas Zequeira,* abogados de los apelantes; *Artemio P. Rodríguez,* abogado de las apeladas.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Ésta es una apelación interpuesta contra sentencia de una corte de distrito condenando por desacato a los demandados en un pleito sobre *injunction* por haber violado la orden de *injunction* preliminar dictada en el mismo.

Muestran los autos que la Compañía Popular de Transporte, Inc., y la Línea Férrea del Oeste, Inc., demandaron en la Corte de Distrito de Bayamón a Luis Suárez, Domingo Antonio Romero y Antonio Romero, haciendo negocios bajo el nombre de "Línea Romero", pidiendo a la corte que dictara contra ellos un auto de *injunction* preliminar ordenándoles que se abstuvieran de cobrar a las personas que viajan en los vehículos de motor que explotan entre Bayamón y San Juan cinco centavos por pasajero o cualquier otro precio que no fuera el de quince centavos fijado por la Comisión de Servicio Público de Puerto Rico, convirtiéndose dicho *injunction* en perpetuo cuando el caso se resolviera en su fondo.

La demanda está jurada y a la misma se acompañan dos certificaciones. Consideró la corte que se alegaban hechos suficientes y ordenó el *injunction* preliminar solicitado, previa prestación de fianza. Prestada ésta, se expidió el mandamiento, notificándose a los demandados.

Así las cosas, las demandantes presentaron una moción alegando. que los demandados continuaban haciendo lo que el mandamiento les prohibía, pidiendo en tal virtud se les castigara por desacato. Citados los demandados contestaron como sigue:

"1.—Que el caso del epígrafe se originó a virtud de una demanda ordinaria sobre *injunction* que se encuentra pendiente ante esta Corte, habiendo comparecido en autos los demandados radicando escrito de excepciones previas.

"2.—Que la orden preliminar de *injunction* dictada por este Tribunal y de cuya infracción se acusa a los demandados, fué expedida sin jurisdicción y sin causa probable, no habiéndose observado en la expedición de la misma las disposiciones de la Sección 5, por cuanto no se presentó petición alguna por separado, de acuerdo con la ley y la jurisprudencia.

"3.—Que esta Corte carece también de jurisdicción para conocer de este caso por tener las demandantes un remedio adecuado ante la Comisión de Servicio Público, que es el organismo al cual compete el conocimiento de toda querella relacionada con la concesión de franquicias y otros privilegios de carácter público semejantes.

"4.—Que ante la mencionada Comisión de Servicio Público está pendiente en la actualidad una querella sobre violación de tarifas entre las mismas partes y con los mismos propósitos a que se refiere el caso del epígrafe radicado ante esta Corte de Distrito."

Los hechos alegados en la moción quedaron admitidos. La corte partió de esa base y desestimando las defensas alegadas declaró culpables de desacato a los demandados imponiendo a cada uno una multa de cincuenta dólares y en defecto de pago un día de cárcel por cada dólar dejado de satisfacer.

No conformes, los demandados apelaron. Sostienen en su alegato que habiendo sido dictada sin jurisdicción la orden de *injunction* preliminar, su desobediencia no constituye desacato. Las demandantes se oponen en el suyo y levantan una cuestión que debe ser estudiada y resuelta en primer término, la de que la sentencia de desacato no es apelable, citando para basar su contención 3 Estee's Pleading and Practice, pág. 723, sec. 5298 y los casos de *Aram* v. *Shallenberger,* 42 Cal. 275; *Cosby* v. *Superior Court,* 110 Cal. 45, y

*Hutton* v. *Superior Court of San Francisco,* 156, como resol-
viendo que ''una orden de una corte declarando a una parte
culpable de desacato no es apelable.''

Ello es así, pero se debe, como sostienen los apelantes en
un alegato adicional que sobre la cuestión presentaron, a que
en California existe un precepto legal que expresamente pro-
hibe la apelación en casos de desacato, la sección 1222 del
Código de Enjuiciamiento Civil.

En Puerto Rico no existe tal precepto. Nada dispone la
ley y siguiendo la línea de autoridades que nos parece mejor
orientada no vemos por qué no deba aplicarse al procedi-
miento de desacato civil, como es éste de que estamos cono-
ciendo (*In re González,* 22 D.P.R. 28), la regla del artículo
295 del Código de Enjuiciamiento Civil, que autoriza la apela-
ción contra las sentencias definitivas dictadas ''en un pleito
o procedimiento especial''. Véase 13 C.J. 100 y siguientes.

■ ¿Actuó la corte de distrito con jurisdicción al decre-
tar el *injunction* preliminar desobedecido?

Sostienen en primer término los apelantes que si bien pa-
rece que fué la intención de las demandantes la de estable-
cer un pleito ordinario de *injunction,* su demanda resulta in-
suficiente porque no termina pidiendo un *injunction* perpetuo,
y en segundo, que aunque la demanda se considerase sufi-
ciente, como no se radicó una petición separada en solicitud
del *injunction* preliminar, éste no pudo expedirse.

No estamos conformes. Basta un solo documento, si es
completo. Que las demandantes iniciaron un pleito ordinario
de *injunction,* es evidente. Sabemos que pidieron sentencia
definitiva al resolverse el caso en su fondo. Y que la propia
demanda pudo servir de base a la petición de *injunction* pre-
liminar, evidente es también. Puede archivarse una peti-
ción separada pero ¿a qué hacerlo si los hechos alegados son
los mismos? El caso del *Municipio de Gurabo* v. *Juncos Cen-
tral Co.,* 18 D.P.R. 408, que los apelantes invocan, no sostiene
su contención. El hecho de que en él dijera esta corte que
''dentro del pleito de *injunction* puede solicitarse la expedi-

ción de un *injunction* preliminar", no cabe interpretarlo en el sentido de que resolviera que la solicitud tenga necesariamente que presentarse por separado.

El otro fundamento que alegan los apelantes para sostener la falta de jurisdicción de la corte sentenciadora es la existencia de otro remedio adecuado para poner en vigor la orden de la Comisión, motivo por el cual era improcedente el *injunction*.

Citan en primer término el artículo 23 de la Ley (Núm. 70) de Servicio Público de Puerto Rico (Leyes de 1917, vol. 2, pág. 481) en la parte que dispone que:

"La Comisión tendrá la facultad y el deber de fijar y determinar los precios, pasajes, o cargos máximos, justos, debidos, iguales y razonables que deban establecerse, exigirse, demandarse, cargarse o cobrarse por las compañías de servicio público por cualquier servicio prestado o suministrado; y los reglamentos y prácticas justos, debidos, iguales, razonables y apropiados, relacionados con dichos precios, que deberán observarse por cualesquiera de dichas compañías. La Comisión podrá clasificar dichos precios. . . ."

Luego invocan el artículo 24 (Leyes de 1917, vol. 2, pág. 483) que al enumerar las facultades de la Comisión determina que tendrá "poder general administrativo" que incluye el de "inquirir, oír, determinar y reglamentar el servicio, precios, pasajes, o cargos de cualquiera y toda compañía de servicio público, incluyendo precios individuales y mancomunados", y descansan por último en la sección 49 de la propia ley (Leyes de 1917, vol. 2, pág. 511) que prescribe:

"En adición a los precedentes poderes expresamente enumerados, la comisión tendrá autoridad, y será su deber, hacer cumplir, ejecutar y llevar a cabo, por medio de sus órdenes, providencias, reglamentos o de otro modo, todas y especialmente las disposiciones de los capítulos segundo y tercero de esta Ley, referentes, respectivamente, a los deberes y limitaciones, y a la creación de las facultades y limitaciones de facultades de las compañías de servicio público; y todas y especialmente las demás disposiciones de esta Ley y la completa intención de las mismas; y tendrá el poder de rescindir o modificar dichas órdenes, providencias, o reglamentos."

Terminan su argumento así:

"Claro está que de acuerdo con la sección transcrita, el caso de los peticionarios compete a la Comisión de Servicio Público, como lo demuestra el hecho de que ante dicho organismo se llevó una querella por las demandantes en esta acción, querella que ha debido continuarse por sus trámites hasta obtener una orden final de la Comisión que dispusiera, si era necesario, la cancelación de los certificados de conveniencia con que operan sus líneas los demandados. Y entonces sería de la incumbencia de la Comisión, personándose en autos dicho organismo, instar a nombre de El Pueblo de Puerto Rico, por conducto del Attorney General, el recurso que fuera procedente para obligar a los demandados a cumplir la resolución final que en el ejercicio de su jurisdicción exclusiva, la Comisión consideraba justa y razonable dictar."

Tampoco estamos conformes porque si bien la Comisión tiene todas las facultades que se han indicado, carece de poderes coercitivos para hacer cumplir sus órdenes según se desprende de la misma ley invocada cuyas secciones 93 y 94 (Leyes de 1917, vol. 2, pág. 537) regulan el pleito que debe iniciarse para obligar el cumplimiento de las órdenes de la Comisión y el que debe establecerse para impedir las infracciones de dichas órdenes.

En ambos casos es la propia Comisión la que actúa por medio del Procurador General, pero ello no quiere decir que no pueda una parte perjudicada en propios casos reclamar su derecho por sí misma. Creemos que están en lo cierto las apeladas cuando sostienen en su alegato que:

"Cuando se viola una orden de la Comisión hay dos partes afectadas, la soberanía, representada por la Comisión de Servicio Público, cuya autorización se desconoce, y otra, la parte querellante a virtud de cuya querella se haya dictado la orden. En el primer caso, es al Attorney General a quien toca actuar a nombre de la Comisión y la Corte de Distrito de San Juan será la que tenga jurisdicción exclusiva para conocer de estos casos. No se necesita entonces alegar perjuicios especiales. En el segundo caso, es la persona o entidad particular la que debe actuar si puede alegar perjuicios especiales, como en nuestro caso, y la jurisdicción de la corte es como de corriente.

" 'Cuando una corporación actúa o amenaza actuar, en exceso de sus poderes corporativos, o está ejercitando indebidamente la franquicia que ella posee en perjuicio de otras personas, un *injunction* prohibitorio es el remedio apropiado. . . Un *injunction* puede ser obtenido por el Estado si los actos son de tal naturaleza que puedan resultar perjudiciales al público. . . Un *injunction* puede ser obtenido por otra corporación o por un individuo cuando se demuestra que el acto corporativo ha causado daños especiales, pero no en otros casos. 32 Corpus Juris, págs. 234, 235, sec. 370; *Chicago Gen. Ry. Co.* v. *Chicago R. R. Co.*, 181 Ill. 605; 54 N. E. 1026.'

" 'Si una corporación de servicio público deja de cumplir los deberes impuestos a dicha corporación por su carta constitutiva o por su franquicia, ella puede ser obligada a cumplir dichos deberes mediante un *injunction* mandatorio incoado por el Estado. . . Un *injunction* puede expedirse también a instancias de un individuo o de otra corporación, cuando la invasión de sus respectivos derechos podría resultar en graves daños con respecto a los cuales no existiese un remedio legal adecuado. 32 Corpus Juris, pág. 236, sec. 373.'

" '. . . . La Ley de Servicio Público no alteró en forma alguna el derecho de una persona o entidad perjudicada por los actos de otra, a protegerse mediante *injunction* en los casos especificados en la ley de 1906 sobre *injunctions*.

"¿De qué serviría a las apeladas que la Comisión dicte órdenes que los apelantes no han de cumplir a menos que mediante un *injunction* pueda obligarles a su cumplimiento? El artículo 93 de la Ley de Servicio Público, permite a la Comisión proceder por conducto del Procurador General a solicitar un *injunction*, pero no es obligatorio para ella hacerlo, y seguramente no lo hará, a menos que los intereses generales del Pueblo de Puerto Rico estén afectados. Tratándose de intereses particulares dejará a la parte que busque su propio remedio.

" 'Excepto en los casos en que ha sido cambiada por estatuto, la regla es al efecto de que un *injunction* no puede ser expedido cuando existe un remedio legal adecuado. Sin embargo, para impedir que se ejercite la jurisdicción de equidad, no es suficiente con que la ley proporcione algún remedio. Dicho remedio debe ser tan práctico y efectivo como lo es el remedio en equidad en proporcionar justicia y debe ser igualmente rápido en su administración.' 22 Cyc. 729 F-1.

"Sostenemos que para que el remedio sea adecuado el conseguirlo debe ser, no una cuestión sujeta a la discreción de la Corte u orga-

nismo que pueda concederlo, sino un derecho absoluto del demandante, una vez que pruebe los hechos que ameriten la concesión del remedio sometido. Si la Corte o el organismo en cuestión puede o no conceder dicho remedio, entonces ese remedio no es adecuado y lo único que queda a la parte actora es solicitar un *injunction* para impedir la violación de la orden o derecho.''

■ Resueltas las cuestiones de ley suscitadas en contra de los demandados, habiendo éstos admitido que desobedecieron la orden de la corte, esto es, que no obstante habérseles ello prohibido siguieron transportando pasajeros por menos precio que el fijado por la Comisión, el desacato es claro (núm. 2, sec. 1, Ley de 8 de marzo, 1906, enmendando la de marzo 1, 1902, definiendo el delito de desacato y disponiendo la pena correspondiente, pág. 85 del Código Penal, ed. de 1937) y *la sentencia condenatoria apelada debe confirmarse.*

El Juez Asociado Señor Córdova Dávila no intervino.