ISMAEL TORRES ET AL., demandantes y recurrentes, *v.* WENCESLAO RODRÍGUEZ h/n/c FUNERARIA SAN JORGE, demandado y recurrido.

*Número:* R-72-291       *Resuelto:* 6 de febrero de 1973

*Nachman, Feldstein, Gelpí & Antonetti,* abogados de los recurrentes; *Gustavo L. Marrero Ledesma,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En su esencia, este caso trata de uno de los valores más preciados de la vida civilizada: la vivienda, que sin ser fastuosa, sea tranquila, serena y agradable; el hogar en el cual el ser humano busca tranquilidad espiritual y física luego de un día gastado en la lucha económica de la sociedad industrial contemporánea.

En su ámbito más reducido técnico legal, en este recurso se plantea si la presentación de una acción judicial por un organismo público—en este caso, la Junta de Planificación— detiene o derrota la acción que ha ejercido, o ejerza, un ciudadano particular en defensa de sus intereses legítimos. Contestamos dicho interrogante en la negativa y a continuación nos explicamos.

Sobre los hechos no hay controversia. Fueron estipulados por las partes e incluidos en su opinión por el tribunal de instancia. El demandado arrendó en calidad de inquilino una residencia sita en la Urbanización Villa Arrieta de Bayamón. Dicha propiedad está clasificada como "residencial" por la Junta de Planificación. Con el propósito de operar allí un negocio de funeraria, el demandado comenzó a hacer una serie de alteraciones a la vivienda que alquiló.

Los demandantes, unas 26 personas, son vecinos de la referida urbanización y propietarios de viviendas allí ubicadas. Al fracasar sus gestiones con el demandado para que desistiese de establecer y operar allí una funeraria, los demandantes incoaron una solicitud de *injunction* en la cual alegan lo antes dicho y además, que la operación en ese lugar residencial de un negocio de funeraria menoscabaría los fines residenciales de la urbanización; aumentaría allí el tránsito de vehículos; crearía problemas de estacionamiento; y menoscabaría el valor de las propiedades allí situadas. Solicitaron

que el tribunal, luego de oídas las partes, ordenase al demandado a desistir de su propósito de operar allí dicho negocio.

Un día antes de presentar los aquí demandantes su acción, el Estado Libre Asociado de Puerto Rico representado por el Presidente de la Junta de Planificación presentó una solicitud de *injunction* contra el inquilino aquí demandado y la propietaria arrendadora, en la cual alegó que los demandados, sin tener permiso de construcción y en violación de las leyes de Puerto Rico llevaron a cabo unas alteraciones en la propiedad objeto de este pleito, para dedicar la misma a uso comercial. Solicitó del tribunal que ordenase a los demandados a demoler por su cuenta las construcciones clandestinas allí hechas y a abstenerse de operar un negocio de funeraria en dicha propiedad o a dedicarla a cualquier otro uso no autorizado por la Junta de Planificación.

El tribunal de instancia entendió que por haberse presentado el recurso del Estado Libre Asociado de Puerto Rico, no procedía el recurso de los demandantes y lo desestimó. Cita en su apoyo los casos de *Cía. Popular de Transporte* v. *Suárez*, 52 D.P.R. 250 (1937) y *Central Cambalache, Inc.* v. *Cordero*, 61 D.P.R. 8 (1942) para sostener que no procede un *injunction* cuando existe otro remedio adecuado, rápido y eficaz en ley. Es cierto que ésa es la norma general, pero el tribunal de instancia erró al aplicar nuestra jurisprudencia y al no aplicar el estatuto pertinente.

En el propio caso citado por el tribunal de instancia de *Cía. Popular de Transporte* v. *Suárez*, supra, resolvimos, ante hechos parecidos a los del caso de autos, que el *injunction* procedía. Allí los demandantes operaban unas líneas de autobuses e instaron un recurso de *injunction* para que los demandados cesaran de transportar pasajeros en determinada ruta por un precio más bajo que el fijado por la Comisión de Servicio Público de Puerto Rico. A pesar de que la Comisión tenía facultad para investigar querellas de esa naturaleza y para recurrir a los tribunales a través del Departamento de

Justicia para hacer cumplir sus órdenes y a pesar de que los demandados argumentaron que los demandantes debían actuar vía ese procedimiento oficial y no mediante la presentación particular de una acción, resolvimos que aunque la Comisión podía actuar por medio del Departamento de Justicia "ello no quiere decir que no pueda una parte perjudicada en propios casos reclamar su derecho por sí misma." Cita precisa a la pág. 255.

Abundando sobre la decisión del caso de *Cía. Popular de Transporte* v. *Suárez*, supra, en *Fleming* v. *Comisión de Servicio Público*, 57 D.P.R. 1, 5 (1940), dijimos:

"Esta corte resolvió que la de distrito había actuado con jurisdicción porque el remedio que los demandantes apelados tenían al amparo de la Ley de Servicio Público de Puerto Rico, no era exclusivo del que podían ejercitar mediante injunction ante los tribunales de justicia. Como dice en su opinión la corte de distrito en el caso de autos: '. . . se reconoce un derecho de acción doble: el de la parte perjudicada directamente y el de la Comisión por conducto del Procurador General'."

El otro caso citado por el tribunal de instancia, *Central Cambalache, Inc.* v. *Cordero*, supra, no es aplicable por ser allí la situación muy distinta. En dicho caso la promovente pretendió conseguir, recurriendo a la jurisdicción original de este Tribunal, un *injunction* contra el Administrador del Fondo del Seguro del Estado y la Comisión Industrial ordenándoles que se abstuvieran de considerarla como patrono no asegurado. Allí, como aquí, expedimos una orden para mostrar causa. Acertadamente el Administrador del Fondo planteó que aquél no era un caso apropiado para invocar nuestra jurisdicción original. Resolvimos que el procedimiento de revisión establecido por la Ley de Compensaciones por Accidentes del Trabajo era el procedimiento adecuado a seguir.

Al disponer sobre acciones sobre bienes inmuebles el articulado vigente del Código de Enjuiciamiento Civil, en su

Art. 277 (32 L.P.R.A. sec. 2761) dispone, en lo pertinente, que todo lo que interrumpa el libre uso de la propiedad de los bienes constituye una perturbación que da lugar a una acción. Dicha acción, continúa disponiendo el citado artículo, podrá ser promovida por *cualquier persona* cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resultase menoscabado por dicha perturbación. La sentencia podrá ordenar que cese aquélla así como decretar el resarcimiento de los perjuicios.

El citado Código, paralelamente con el derecho de acción que mediante su Art. 277 concede a cualquier persona perjudicada en sus bienes inmuebles o en su bienestar personal, al disponer sobre el *injunction* en general, dispone en su Art. 686 (32 L.P.R.A. sec. 3532) que podrá concederse un *injunction* a petición del Estado Libre Asociado de Puerto Rico para prohibir y suprimir un perjuicio común. Puede verse que por nuestro Código de Enjuiciamiento Civil del año 1933 ya se reconocían expresamente dos acciones disponibles para proteger la propiedad y el bienestar personal. El Art. 277 antes citado, como vimos, concede el derecho de acción a *cualquier persona* cuyos bienes o bienestar personal fuesen perjudicados por una perturbación no autorizada por ley. El Art. 686 autoriza *al Estado* a solicitar un *injunction* para prohibir y suprimir un perjuicio común. El derecho concedido por el Art. 686 no lo puede ejercer una persona particular—como puede hacerlo bajo el Art. 277—pero el Estado puede ser el promovente cuando el perjuicio es común. Por lo que se verá más adelante, no tenemos que resolver si el perjuicio en el caso de autos es común, aunque creemos que un perjuicio que menoscaba la propiedad y el bienestar personal de un número apreciable de residentes de una urbanización con toda probabilidad sería considerado como un perjuicio común.

En *Figueroa Velázquez* v. *A.A.A.*, 99 D.P.R. 105 (1970), confirmamos en parte una sentencia de *injunction*. Allí, debido a la situación de hechos particulares del caso, resolvimos que

la sentencia fue muy drástica al ordenar la remoción de una bomba de alcantarillado y la limitamos a ordenar a la demandada que realizase las obras necesarias para eliminar la perturbación ocasionada por los malos olores.

En *Fuentes* v. *Gulf Petroleum*, 91 D.P.R. 559 (1964), confirmamos una sentencia de *injunction* en una acción basada en el citado Art. 277 del Código de Enjuiciamiento Civil ordenando que se cesase de derramar aguas nocivas en predios vecinos. En *Casiano Sales* v. *Lozada Torres*, 91 D.P.R. 488 (1964), se ejerció una acción al amparo del Art. 277 antes citado, y allí ordenamos la elevación de una chimenea de una fábrica a una altura que evitase la circulación de sustancias nocivas por la residencia de los demandantes y concedimos daños.

En *Arcelay* v. *Sánchez*, 77 D.P.R. 824 (1955), confirmamos una sentencia de *injunction* basada también en actos del demandado que menoscababan el libre y cómodo goce de la vida y la propiedad de la demandante.

Aparte de que a base del Art. 277 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 2761) y de la jurisprudencia aplicable el *injunction* procedía, también procede a base de la Ley de Planificación y Presupuesto, Ley Núm. 213 de 12 mayo 1942, según enmendada, 23 L.P.R.A. sec. 1 y ss. Dicha ley, igual que el Código de Enjuiciamiento Civil, también autoriza las acciones separadas y no exclusivas del Estado y de las personas particulares cuando se violan determinadas secciones de la ley o cuando se violan los reglamentos promulgados al amparo de la misma. El Art. 24 de dicha ley, 23 L.P.R.A. sec. 24, dispone en lo pertinente que el Secretario de Justicia a nombre del Estado o de cualquier propietario u ocupante de una propiedad vecina que resultase perjudicado por violaciones a la ley antes mencionada, podrá entablar recurso de interdicto, *mandamus* o cualquier otra acción adecuada, para impedir, prohibir o remover cualquier edificio

o uso hechos o mantenidos en violación de determinados artículos de la ley o de sus reglamentos.

La Ley que situó el Negociado de Permisos en la Junta de Planificación, Ley Núm. 78 de 22 de junio de 1954 (23 L.P.R.A. sec. 35) autoriza a la Junta de Planificación para que a través del Departamento de Justicia entable los recursos adecuados para impedir, prohibir o remover cualquier edificio construido o utilizado en violación de la Ley de Planificación y sus reglamentos.

La Ley de Planificación, en su Art. 12 (23 L.P.R.A. sec. 42) luego de disponer que el Secretario de Justicia a nombre del Estado Libre Asociado de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina que resultase perjudicado por cualquier violación a la ley, "además de los otros remedios provistos por ley," podrá entablar recurso de interdicto, *mandamus* o cualquier otra acción adecuada para prohibir o remover cualquier edificio o uso hechos o mantenidos en violación de la ley y sus reglamentos. Y a renglón seguido ese artículo añade lo siguiente:

"Entendiéndose, que estas disposiciones no privan a cualquier persona o ciudadano de incoar el procedimiento adecuado en ley para evitar infracciones a las secs. 24, 27, 28, y 31 a 42 de este título y todos los reglamentos relacionados con la misma y para evitar cualquier estorbo adyacente o en la vecindad de la propiedad o vivienda de las personas o ciudadanos afectados."

■ Como puede verse, la citada disposición confiere expresamente a los ciudadanos particulares—independientemente de la acción que pueda promover o no el Estado—a solicitar y obtener, si la situación lo justifica, una sentencia de *injunction*.

Si el *injunction* procede para impedir violaciones a restricciones privadas sobre la propiedad—*Cruz* v. *Ortiz*, 74 D.P.R. 321, 330 (1953); *Santaella* v. *Purón*, 60 D.P.R. 552 (1942); *Macatee* v. *Biascochea*, 37 D.P.R. 1 (1927); *Lawton* v. *Rodríguez Rivera*, 35 D.P.R. 487 (1926); *Glines* v. *Matta*, 19

D.P.R. 409 (1913) ¿cómo no ha de proceder para impedir violaciones a restricciones de zonificación y planificación, las cuales son de orden público? Como dijimos en *Cruz* v. *Ortiz*, supra, a la pág. 330, "en el caso de autos los derechos del demandante han sido creados por ley y las violaciones de esos derechos pueden ser prohibidas mediante *injunction*." (¹)

No puede oponerse al derecho de los demandantes a solicitar un *injunction* para defender sus intereses legítimos, el derecho que la ley independientemente le confiere al Estado y a la Junta de Planificación de iniciar una acción similar. Esas acciones que la ley confiere a los organismos públicos no son el "remedio adecuado, rápido y eficaz" que podría derrotar el derecho a recurrir a la demanda de *injunction*. No lo son porque si bien es cierto que en determinados momentos o épocas los funcionarios y empleados públicos pueden ser dedicados, diligentes y laboriosos es concebible que en otros momentos o épocas sean todo lo contrario. Ni la ley positiva lo exige, ni lo exigen el derecho y la justicia que las personas particulares tengan que cruzarse de brazos indefinidamente mientras son lesionadas en sus intereses y en su bienestar, por el hecho de que el Estado o uno de sus organismos tenga en ley un derecho de promover una acción, cuya acción, por innumerables razones los funcionarios públicos decidan no ejercer.

Procede el *injunction* en el caso de autos tanto bajo el Art. 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2761, como por constituir la operación de una funeraria en aquel lugar una violación a la Ley de Planificación y Presupuesto de Puerto Rico. El *injunction*, dice la ley, procede cuando el peticionario "tiene el derecho al remedio solicitado." Art. 677 del Código de Enjuiciamiento Civil, 32 L.P.R.A.

(¹) Para una discusión sobre servidumbres legales establecidas para utilidad pública, servidumbres legales establecidas en interés de los particulares y restricciones privadas, véase *Borges* v. *Registrador*, 91 D.P.R. 112 (1964). Para facultades legislativas y administrativas para la eliminación sumaria de rótulos y anuncios ilegales, véase *Cervecería Corona* v. *Obras Públicas*, 97 D.P.R. 44 (1969).

sec. 3523. Aquí el remedio está expresamente autorizado por la Ley de Planificación y Presupuesto, 23 L.P.R.A. sec. 42.

█ Los tribunales debemos facilitar en todo lo posible, dentro de ley, el que tanto el Estado como las personas particulares puedan hacer efectivas las disposiciones civilizadoras de urbanismos. *Cf. Cervecería Corona* v. *Secretario de Obras Públicas*, 97 D.P.R. 44 (1969). En *Oregon City* v. *Hartke*, 400 P.2d 255 (1965), el tribunal, dando muestras de una exquisita sensibilidad para con los problemas del urbanismo y de la vida del ser humano en sociedad, dijo:

"Hay un creciente reconocimiento judicial del poder público para imponer restricciones de zonificación que sólo pueden justificarse en la conveniencia de evitar alrededores discordantes o antiestéticos. Esta actitud es un reflejo del refinamiento de nuestros gustos y de una creciente apreciación de los valores culturales en una sociedad en proceso de maduración. Este cambio puede también atribuirse a la expansión judicial del poder de policía para incluir dentro del concepto de "bienestar general" el enriquecimiento de la vida cultural de los ciudadanos. . . . La idea de que el bienestar general incluye valores estéticos fue reconocida en *Berman* v. *Parker,* 348 U.S. 26 (1954) en donde se dijo que el concepto de bienestar general es amplio e inclusivo [citas omitidas]. Dicho concepto incluye valores espirituales así como físicos, estéticos y económicos." 400 P.2d 261.

Mediante una adecuada y firme política pública legislativa, administrativa y judicial podríamos evitar que a la realidad urbana puertorriqueña le sea aplicable la adolorida y elocuente expresión que a continuación copiamos de Le Corbusier (1887–1965), eminente arquitecto y urbanista de este siglo:

"En todas estas ciudades se molesta al hombre.[2] Cuanto le rodea le ahoga y le aplasta. No se ha salvaguardado ni construído nada de lo necesario para su salud física y moral. En las grandes ciudades reina una crisis de humanidad, que repercute

---

(2) Se refiere el autor a 33 ciudades de las mayores del mundo estudiadas por el Congreso Internacional de Arquitectura Moderna (CIAM) en su Asamblea de Atenas de 1933.

en toda la extensión de los territorios. La ciudad ya no responde a su función, que consiste en dar albergue a los hombres, y en albergarles bien.

El predominio de la iniciativa privada, inspirada por el interés personal y el hambre de la ganancia, se halla en la base de este lamentable estado de cosas. Hasta el momento no ha intervenido autoridad alguna consciente de la naturaleza y de la importancia del movimiento del maquinismo, para evitar unos estragos de los que no es posible hacer efectivamente responsable a nadie. Las actividades quedaron, durante cien años, abandonadas al azar. La construcción de viviendas o de fábricas, la ordenación de las rutas terrestres, fluviales o marítimas y de los ferrocarriles, todo se ha multiplicado en medio de un apresuramiento y de una violencia individual que excluían todo plan preconcebido y toda meditación previa. Hoy, el mal ya está hecho. Las ciudades son inhumanas, y de la ferocidad de unos cuantos intereses privados ha nacido la desdicha de innumerables personas.

El sentimiento de la responsabilidad administrativa y el de la solidaridad social sufren diariamente una derrota a manos de la fuerza viva e incesantemente renovada del interés privado. Estas diversas fuentes de energía se hallan en perpetua contradicción, y cuando una de ellas ataca, la otra se defiende. En esta lucha, desgraciadamente desigual, lo corriente es que triunfe el interés privado, que garantiza el éxito de los más fuertes en detrimento de los débiles. Pero del mismo exceso del mal surge a veces el bien, y el inmenso desorden material y moral de la ciudad moderna acaso tenga como consecuencia la de hacer surgir por fin el estatuto de la ciudad, el cual, apoyado en una fuerte responsabilidad administrativa, instaurará las reglas indispensables para la protección de la salud y de la dignidad humanas." (3)

---

(3) Le Corbusier, *Principios de Urbanismo* (La Carta de Atenas), traducción española, Ediciones Ariel, Barcelona (1971), págs. 114–116. En general, sobre estos problemas véanse Rigotti, *Urbanismo*, traducción española, Editorial Labor (1960); Chapin, *Urban Land Use Planning*, 2da. ed. (1965); Gottmann, *Megalopolis* (1961); Willhelm, *Urban Zoning and Land Use Theory* (1962); Perloff, *Planning and the Urban Community*

*En vista de lo anterior debe expedirse el recurso, revocarse la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en este caso en 18 de septiembre de 1972 y dictarse otra declarando con lugar la solicitud de injunction de los demandantes y prohibiéndole al demandado operar en forma alguna, directa o indirectamente, un negocio de funeraria, o de cualquier otra naturaleza, en la vivienda objeto de este litigio.*

(1961); Rathkopf, *The Law of Zoning and Planning,* 2da ed. (1949); Simposio titulado "Urban Problems and Prospects" que contiene 15 artículos, en 30 *Law & Contemp. Prob.* 1 (1965).