Negroni Cintrón, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Empresas Stewart de Puerto Rico ("Stewart") solicita la revisión de una Resolución emitida y notificada el 23 de octubre de 1997 por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Fajardo, mediante la cual dicho foro ordenó la paralización permanente de una obra de remodelación y construcción de una estructura que le pertenece a Stewart y que está ubicada en el pueblo de Fajardo, a solicitud de la parte recurrida, varias funerarias que objetan que Stewart *1105 establezca una nueva funeraria en la localidad indicada.
Emitimos orden de mostración de causa dirigida a la parte recurrida en la que también le solicitamos que sometieran una exposición estipulada de la prueba oral desfilada en la vista evidenciaría celebrada por el foro indicado antes de emitir el dictamen recurrido y copia del plano de construcción aprobado por la Administración de Reglamentos y Permisos de Puerto Rico ("A.R.P.E.") que se había sometido como prueba en la vista. Las partes cumplieron, por lo que estamos en condición de dictaminar.
A continuación el trasfondo fáctico y procesal pertinente.
I
Alegando que Stewart carecía del permiso que para ello debía expedir la A.R.P.E. y acogiéndose al procedimiento especial establecido por el artículo 28 de la Ley Núm. 76 del 24 de junio de 1996, 23 L.P.R.A. See. 72, el 19 de septiembre de 1997 las funerarias recurridas presentaron una "Solicitud" para que el foro recurrido le ordenara a Stewart que paralizara permanentemente la construcción y remodelación de un inmueble de su propiedad que dedicaría al negocio de funeraria. De la prueba presentada en la vista celebrada, surge que, para la fecha de la presentación de esta solicitud, Stewart no tenía permiso de construcción alguno, aunque desde el 24 de junio de 1997 lo había solicitado.
El 3 de octubre de 1997 el foro recurrido expidió una orden de paralización provisional y pautó la celebración de una vista para considerar si expedía o no una orden de paralización permanente.
El 6 de octubre del mismo año la A.R.P.E. emitió el permiso de construcción que Stewart había solicitado. El 14 del mismo mes y año las funerarias recurridas presentaron ante la Junta de Apelaciones sobre Construcciones y Lotificaciones ("Junta”) una apelación impugnándolo. Ello no obstante, el 15 de octubre del mismo año se celebró ante el tribunal de instancia la vista pautada para considerar la solicitud de paralización permanente pendiente. En ésta testificaron dos (2) personas: el Ingeniero Héctor Padilla Figueroa, Director Regional Interino de la A.R.P.E., y en representación de Stewart el Arquitecto Antonio Marín, proyectista que preparó los planos de construcción y sometió ante la A.R.P.E. la Solicitud de Permiso de Construcción.
Según la estipulación de la prueba oral sometida por las partes, el ingeniero Héctor Padilla Figueroa testificó que fue la persona que firmó el Permiso de Construcción en representación del Director Regional de la A.R.P.E., el ingeniero Herminio Pereira; que no estaba muy familiarizado con los detalles del caso ya que fue el ingeniero Miguel A. Pérez de la A.R.P.E. quien revisó la documentación presentada por Stewart junto con la Solicitud del Permiso de Construcción y recomendó su aprobación mediante el procedimiento de certificación de proyectos que dispone la reglamentación aplicable; que no empece a que la solicitud fue aprobada el 30 de junio, el permiso de construcción no se expidió hasta que el 6 de octubre de 1977 se sometieron todos los endosos y documentos; que el procedimiento establecido en la oficina regional para expedir permisos certificados es que al presentarse una solicitud de permiso bajo la Ley de Certificaciones, el profesional que la prepara es quien le certifica a la agencia, mediante la entrega de los documentos requeridos, que la construcción y el uso que se habrá de dar a la misma está conforme a los reglamentos de planificación aplicables y que el técnico de la A.R.P.E. examina que los documentos sometidos estén completos y que se hayan obtenidos los correspondientes endosos y seguros de construcción; que según el plano de construcción certificado sometido por Stewart, la remodelación consistía en la construcción de unas capillas (velatorios), una iglesia, un salón de exhibición y oficinas administrativas; que el uso catalogado como "establecimiento para servicios personales" y el término "funeraria" no están definidos en el Reglamento de Zonificación; que el Director Regional de la A.R.P.E. tiene discreción para aceptar y aprobar distintos usos como "establecimiento para servicios personales" y que aunque un masajista no aparece claramente identificado entre los usos permitidos bajo la zonificación C-l, dicho uso puede ser considerado como un "establecimiento para servicios personales".
Concluyó que él entendía que el Director de la A.R.P.E. tenía discreción para aprobar el establecimiento propuesto por Stewart como uno de servicios personales; que los establecimientos para servicios personales están contemplados bajo la zonificación C-l, pero que una funeraria no lo *1106 está, pues está contemplada para un distrito de zonificación C-2 y que la propiedad objeto de esta caso está localizada en un solar zonificado como C-l.
Las partes estipularon que el ingeniero Padilla Figueroa fue impreciso al describir el proyecto pues en ocasiones declaró que él entendía que el proyecto era una funeraria y en otras que parecía ser una capilla donde la gente meramente iba a rezar y a sufrir la pena de la pérdida de un ser querido, por lo cual, entendía que podría ser aprobado como un establecimiento para servicios personales. El arquitecto Marín, por su parte, testificó que el proyecto en cuestión no tendría una sala de embalsamamiento de cadáveres; que los servicios de embalsamamiento serían realizados en otro establecimiento; que en su opinión el proyecto tenía que considerarse como un establecimiento para servicios personales que podía ubicarse dentro de un distrito de zonificación C-l ; que el uso propuesto es uno más a tono con los demás usos identificados bajo el distrito de zonificación C-l que aquellos que se litigan bajo el distrito de zonificación C-2; que certificó el proyecto correctamente, ya que la solicitud y el plano de construcción sometidos ante la A.R.P.E. cumplían con las leyes y los reglamentos aplicables; que entendía que no era necesaria una consulta de ubicación o la presentación de un anteproyecto solicitando una variación en el uso para este local; que la razón que se tuvo a la hora de presentar el permiso mediante el procedimiento de certificación no fue el que dicho procedimiento fuese más rápido que el procedimiento de anteproyecto o que en éste se omitiera el escrutinio y la evaluación de la agencia administrativa, ya que el profesional es quien garantiza a la agencia que lo solicitado cumple y está en conformidad con el reglamento; que en ningún momento se intentó engañar a la A.R.P.E. sobre el proyecto y el uso propuesto por Stewart; que de los planos de construcción que fueron sometidos ante la A.R.P.E. surge que no se trata de una funeraria y que, al certificar este proyecto, el arquitecto no tuvo la intención de obviar el trámite de evaluación de proyectos ante la A.R.P.E.
Declaró finalmente que la A.R.P.E. no aprueba proyectos a ciegas; que entre la fecha de presentación ante la A.R.P.E. (24 de junio de 1997) y la fecha de expedición del Permiso (6 de octubre de 1997), dicho organismo tuvo más de tres (3) meses para evaluar y aprobar el proyecto solicitado; que el haber expedido el permiso solicitado significa que evaluó debidamente la solicitud y estuvo de acuerdo con el proyecto según lo certificó el arquitecto.
Recibida y evaluada esta pmeba oral y la copia del plano del proyecto, el 23 de octubre de 1997 el tribunal de instancia dictó la Resolución recurrida y le ordenó a Stewart que paralizara permanentemente la remodelación que estaba realizando.
II
En su recurso ante nos Stewart señala que el tribunal de instancia incurrió en los siguientes errores:

"Erró el tribunal de instancia al determinar que las funerarias recurridas tenían capacidad jurídica para instar su solicitud a pesar de que no alegaron ni probaron que eran personas afectadas dentro de la definición estatutaria del Artículo 28 de la Ley Núm. 76 de 24 de junio de 1975, 32 L.P.R.A. sec.72.

Erró el tribunal de instancia al emitir la orden de paralización a pesar de que Empresas Stewart cuenta con un permiso de construcción legítimamente otorgado por A.R.P.E."

Argumenta, en primera instancia, que ninguna de las funerarias recurridas alegó o demostró ser una persona afectada según definida en el Artículo 28 de la Ley Núm. 76, supra, o propietaria u ocupante de una de las propiedades vecinas que pudiera resultar perjudicada por la remodelación de la propiedad perteneciente a Stewart, por lo que las recurridas no tenían legitimación activa para solicitar el remedio interdictal concedido. Razonó que ni la propiedad ni la remodelación llevada a cabo por Stewart se encuentran "adyacente o en la vecindad, de la propiedad o vivienda de la persona afectada, o que las funerarias recurridas sean "colindantes y vecinos que pudieran ser afectados...", o que las funerarias recurridas sean personas afectadas según se define en el artículo 28 de la Ley Núm. 76, supra. Postula que, mediante este proceso, las funerarias recurridas tratan de evitar que se establezcan en el pueblo de Fajardo servicios personales que consideran análogos a los que éstas puedan presentar en los pueblos de Fajardo y Ceiba, que éstas tienen un interés estrictamente económico y que lo que pretenden es evitar que servicios personales que éstos puedan incluir en su *1107 negocio sean prestados en el pueblo de Fajardo. Concluyó que ello no es suficiente para poder invocar el remedio provisto por el artículo 28 de la Ley Núm. 76, supra.
En cuanto al segundo error sostiene que el tribunal de instancia se arrogó las facultades adjudicativas de la A.R.P.E. y de lá Junta para determinar la procedencia del permiso concedido por la A.R.P.E. Argumenta que habiendo Stewart demostrado que contaba con un permiso de construcción expedido por la A.R.P.E. el tribunal a quo debió detener su indagación, ya que el único objetivo del procedimiento provisto por el Artículo 28 de la Ley Núm. 76, supra, es "...ordenar la paralización inmediata de obras clandestinas...". A.R.P.E. v. Rodríguez, 127 D.P.R. 793, 807 (1991); Luan Inv. Corp. v. Román, 125 D.P.R. 533, 544 (1990), intentar vindicar la reglamentación gubernamental de la ley de A.R.P.E. y sus reglamentos y eliminar estorbos a través de la participación ciudadana en el proceso.
Sostiene que el permiso de construcción debidamente otorgado por la A.R.P.E. estableció, cuando menos, un estado provisional de derecho sujeto a los resultados de la apelación, según se resolvió en A.R.P.E. v. Ozores Pérez, 106 D.P.R. 816, 822 (1986), y que no es hasta que la A.R.P.E. o la Junta en su momento tome una determinación con relación al permiso de constmcción impugnado que la parte recurrida puede acudir ante el tribunal. Artículo 31 de la Ley Núm. 76, 23 L.P.R.A. 72c.
Expuso que el Artículo 28 de la Ley Núm. 76, supra, no es mecanismo para que el tribunal de instancia revise la determinación de expedir un permiso de construcción de una agencia especializada como la A.R.P.E. citando a Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, Op. de 21 de mayo de 1997, 97 J.T.S. 34, aduciendo que estos permisos gozan de presunción de regularidad y corrección. Cf. Rivera Pagán v. Superintendente de la Policía, Op. de 29 de abril de 1994, 94 J.T.S. 60.
Atendidos los planteamientos levantados y examinados los autos ante nos, debemos revocar el dictamen recurrido. Veamos.
III
El artículo 28 de la Ley Núm. 76, supra, dispone en lo pertinente lo siguiente:

"El Administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o del propietario u ocupante de una propiedad vecina, que resultare o pudiere resultar especialmente perjudicado por cualesquiera de dichas violaciones, además de los otros remedios provistos por ley, podrá entablar recurso de interdicto, mandamus, nulidad o cualquiera otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso hechos o mantenidos, en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a ley y cuya estructuración le haya sido encomendada a la Administración. Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este Capítulo y a todos los reglamentos relacionados con el mismo, para evitar cualquier estorbo (nuisance) adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:

"(a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o alegando que el mismo está siendo construido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, en violación de este Capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato, la obra o uso a que la petición se refiere, hasta tanto se ventile judicialmente su derecho.

(b) En la orden provisional se fijará la fecha de la vista que deberá celebrarse dentro de los diez (10) días siguientes a la radicación de la petición y se advertirá al querellado que en dicha vista podrá él comparecer, personalmente o por abogado, a confrontarse con las imputaciones que se le hacen, pudiendo dictarse la orden permanente si dejare él de comparecer.

*1108
(c) Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra.

(d) Dicha orden deberá ser diligenciada en la misma forma en que se diligencia la citación para la primera comparecencia en los casos de desahucio. Se podrán utilizar los servicios de cualquier alguacil de los tribunales de justicia de Puerto Rico o de cualquier miembro de la Policía Estatal para diligenciar dicha orden. Se entregará al querellado copia de la orden y copia de la petición jurada. Ambos documentos llevarán el sello del tribunal.

(e)El querellado no vendrá obligado a radicar alegación escrita alguna en contestación a la petición, pero podrá oponer cualquier defensa procedente, como si se tratase de un caso criminal. No se cobrarán costas. Siempre que surgiese controversia sobre los hechos, el tribunal realizará una inspección ocular si lo creyere conveniente y si alguna de las partes lo solicita durante la vista.

(f)La resolución podrá ordenar la paralización permanente de los actos alegados en la petición o dejar definitivamente sin efecto la orden provisional. Toda resolución será escrita y contendrá una exposición de las alegaciones principales de la petición y de la prueba producida por ambas partes, una referencia al mapa, plano o ley alegadamente infringido, o una transcripción de la disposición reglamentaria aplicable y una exposición de lo que hubiese demostrado la inspección ocular. •

(g) Las resoluciones y órdenes serán apelables para el tribunal correspondiente de superior jerarquía. En tales apelaciones, y en lo aquí no provisto, regirán los términos y procedimientos que rigen las apelaciones en las acciones ordinarias, pero el récord lo constituirá el expediente original, que deberá ser elevado al tribunal de apelación. En caso de que la apelación se funde en apreciación de prueba y así se haga constar en el escrito de apelación, podrá elevarse la transcripción de la evidencia. En todos los demás casos, se considerarán como finales, a los efectos de la apelación, las adjudicaciones de hechos contenidas en la resolución.

(h) El hecho de que se inicie el procedimiento especial aquí provisto impedirá el que pueda dictarse sentencia en una acción criminal sobre los mismos hechos. El hecho de haberse iniciado una acción criminal sobre los mismos hechos, impedirá el que pueda expedirse una orden provisional o permanente bajo este procedimiento especial. 23 L.P.R.A. see. 72. (Enfasis nuestro.)

El procedimiento especial prescrito en este artículo es de naturaleza estatutaria, especial y. sumaria". Luán Investment Corp. v. Román, supra, pág. 544.. Su razón de ser es hacer viable y vindicar el cumplimiento de la Ley Núm. 76, supra, y la reglamentación correspondiente.
Persigue un propósito específico y limitado: la paralización de obras o de usos que constituyan violaciones a la ley. A.R.P.E. v. Rodríguez, supra. Todo ello en armonía con las funciones más importantes de la A.R.P.E.: " '[ajplicary velar el cumplimiento de sus propios reglamentos, de los Reglamentos de Planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo, subdivisión y uso de terrenos y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza, o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico'." Asoc. Res. Baldrich, Inc. v. J.P. de P.R., 118 D.P.R. 759, 767 (1987).
El artículo 28 de la Ley Núm. 76, supra, establece el procedimiento especial para combatir la ilegalidad. Luan Investment Corp. v. Román, supra, págs. 543-544, Véanse, además: Torres v. Rodríguez, 101 D.P.R. 177 (1973); A.R.P.E. v. Ozores Pérez, supra; Luan Investment Corp. v. Román, supra, págs. 543-544. Su lectura integral revela, sin ambages, que el Administrador de la A.R.P.E., el Secretario de Justicia de Puerto Rico, los ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra y las personas individuales están facultados para utilizarlo. Los primeros dos pueden hacerlo a nombre de El Pueblo de Puerto Rico y de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiere resultar especialmente perjudicado por cualesquiera de dichas violaciones. Los ingenieros o arquitectos pueden utilizar el trámite especial, si actúan como proyectistas o inspectores de la obra que viola la ley o la reglamentación aplicable. Pero para que las personas individuales puedan utilizarlo, éstos tienen que ser propietarios u ocupantes de una *1109 propiedad vecina o colindante que resultare o pudiere resultar especialmente perjudicados o afectados por la violación.
En el pleito que nos ocupa y como hemos reseñado antes, las funerarias recurridas se acogieron al procedimiento dispuesto, en el artículo 28 de la Ley Núm. 76, supra, para solicitar la paralización permanente de la obra que realizaba Stewart. Es un hecho sobre el cual no existe controversia y así lo determinó el tribunal de instancia en su sentencia que los recurridos son dueños o representantes de un grupo de funerarias establecidas y operando en los municipios de Ceiba y Fajardo (Apéndice certiorari, pág, 2), pero el foro sentenciador no identificó en cuáles de estos pueblos residía cada uno de los recurridos. Tampoco especificó cuáles recurridos tenían ubicados sus funerarias en Fajardo y cuáles eran colindantes o no de la propiedad de Stewart objeto de la controversia. Concluyó, sin embargo, que tenían legitimación activa para utilizar el vehículo procesal que establece el artículo 28 de la Ley Núm. 76, supra.
En su escrito ante nos, Stewart cuestiona esa legitimación, pero la estipulación de la prueba oral desfilada en la vista celebrada que fuera sometida por las partes ante este Tribunal no incluye prueba sobre el particular que apoye su planteamiento. Se limita a señalar que el asunto se levantó. Todo ello, impide que podamos considerar los méritos del primer señalamiento de error levantado por Stewart. Para poder descartar la conclusión del foro sentenciador, la discusión del error no puede producirse en un vacío fáctico evidenciario, pues conocido es que como no es necesario aseverar la capacidad para demandar o ser demandado, la parte que cuestiona esa capacidad no sólo tiene que aseverarla y controvertirla, Regla 7.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, sino demostrarlo en su momento.
Como la estipulación de la prueba oral revela que esa prueba no desfiló ante el foro recurrido, Stewart no nos ha colocado en posición de atender su señalamiento. Pasemos, pues, a considerar el segundo error imputado.
Para la fecha en que se presentó el recurso, la A.R.P.E. no había concedido el permiso correspondiente, pero a la fecha en que el tribunal de instancia emitió la orden de paralización permanente, tal situación había cambiado pues la A.R.P.E. había concedido el permiso. Aún así el foro recurrido procedió a paralizar la obra de construcción. Razonó esencialmente que el permiso obtenido por Stewart no cumplía con las disposiciones legales y reglamentarias aplicables debido a que se construia una funeraria o edificio de capillas en una Zona C-1 que no lo permitía y que de considerarse como variación la A.R.P.E. debió celebrar vistas públicas. Coincidimos con Stewart que al así disponer, el foro recurrido incurrió en error.
La función que ejercía el tribunal de instancia al considerar la petición de paralización permanente promovida por las personas o funerarias recurridas no era la de revisar la corrección de la decisión de la A.R.P.E. de concederle a Stewart permiso para construir el edificio objeto de la controversia. Al tenor del citado artículo 28 de la Ley Núm. 76, supra, la función del tribunal era determinar si Stewart realizaba una obra en violación de la Ley y de los reglamentos de zonificación aplicables por carecer del permiso para la realizar la obra. Dentro de esta perspectiva como Stewart no contaba con el correspondiente permiso en la fecha en que se presentó la querella, la orden de paralización provisional fue emitida correctamente. Sin embargo, como Stewart obtuvo el permiso requerido y éste estaba en pleno vigor para la fecha de la vista en que se consideró la solicitud de paralización permanente, solamente hubiera procedido la paralización de la obra si las funerarias recurridas hubieran demostrado que la obra se realizaba en violación del permiso que la A.R.P.E. le había concedido a Stewart.
El foro sentenciador no podía convertir de facto el procedimiento especial que conducía en una vista evidenciaria para que las funerarias recurridas impugnaran el permiso concedido por la A.R.P.E. toda vez que ello es facultad exclusiva en el orden administrativo de la Junta ante la cual los recurridos apelaron la decisión de la A.R.P.E. concediendo dicho permiso y, de solicitarse posteriormente la revisión judicial de la decisión que emita la Junta, de este Tribunal. Es a estos foros a los que les corresponde en su momento pasar juicio sobre la corrección del permiso que la A.R.P.E. le concedió a Stewart y si la obra cuestionada puede o no ubicarse en la zona de planificación C-1.
*1110 Mientras tanto, el tribunal de instancia debió (1) presumir la regularidad y corrección del permiso, Cf. La Facultad para las Ciencias Sociales v. C.E.S., opinión del 2 de junio de 1993; 93 J.T.S. 91; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987), y (2) concederle deferencia a esa decisión. Cf. Comisionado de Seguros de Puerto Rico v. General Accident Insurance Co. of P.R. Ltd., opinión del 28 de enero de 1993; 93 J.T.S. 10. No debió indagar sobre la corrección de esta facultad exclusiva y sustituirla por sus propios criterios. Debió presumir que la A.R.P.E. actuó con corrección, de conformidad con el estatuto que la creó y le confirió facultad para adoptar reglamentos para regular el trámite sobre concesión, denegación y revocación de permisos. Debió también considerar que al conceder el permiso la A.R.P.E. interpretó administrativamente el estatuto y la reglamentación pertinente y la aplicó; interpretación administrativa que, como producto del organismo encargado de velar por su cumplimiento, merece gran respeto y deferencia por los tribunales. M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183 (1984); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153 (1985). Véase Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Según los planos y la Solicitud de Permiso sometidos por Stewart a la A.R.P.E., no es difícil concluir que aun cuando Stewart informó en su solicitud que no embalsamaría cadáveres en el inmueble para el que solicitaba el permiso de construcción, el local se utilizaría para velar cadáveres en las capillas que se construirían en el local, función íntimamente relacionada y asociada con el negocio de funerarias. Tampoco lo es concluir que el Reglamento de Zonificación No. 4 no permite funerarias en una Zona C-l, como lo hizo el foro sentenciador. A pesar de ello, la A.R.P.E. concedió el permiso solicitado por Stewart luego de evaluar la certificación y los anejos que ésta le sometió. Ello implica que dicha agencia consideró esos aspectos al decidir que le concedería el permiso de construcción a Stewart autorizando el servicio de funeraria modificado a que se destinaría la obra, clasificándolo como uno de servicios personales.
Aunque esa concesión pudiese ser incorrecta, la decisión de la A.R.P.E. estableció un estado provisional de derecho en el orden administrativo que Stewart está acatando y que solamente puede ser revisado como antes indicamos. Mientras ese estado de derecho no sea alterado por los organismos antes indicados, el tribunal de instancia tenía que acatarlo al evaluar la solicitud formulada por las funerarias recurridas al tenor del artículo 28 de la Ley Núm. 76, supra. Distinto hubiese sido el caso si el tribunal de instancia hubiese recibido prueba de que Stewart construía de forma contraria al permiso que se le concedió. En esas circunstancias, la existencia del permiso no hubiese impedido que dicho foro hubiera emitido la orden de paralización autorizada por el artículo 28 de la Ley Núm. 76, supra.
Recapitulando. El tribunal de instancia no podía pasar juicio sobre la corrección del permiso de construcción que la A.R.P.E. le concedió a Stewart, sustituir el criterio de la A.R.P.E. por el suyo, concluir que el permiso es contrario a la ley o el Reglamento de Zonificación sin que la Junta o este Tribunal en el ejercicio de su función revisora lo hubiese así decretado y revocar el permiso dentro del proceso autorizado por el Art. 28 de la Ley Núm. 76, supra, que se condujo ante él.
IV
Por los fundamentos y razonamientos antes expuestos, se expide el auto solicitado y se revoca el dictamen recurrido.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General