Naím Merheb y Otros, demandantes y recurrentes, *v.* Dr. Eliezer Benero Natal y Otros, demandados y recurridos.

*Número:* RE-87-490      *Resuelto:* 27 de octubre de 1987

*Aida L. Muñoz Colón,* abogada de los recurrentes; los recurridos no comparecieron.

## SENTENCIA

Al resolver este recurso nos orientan los pensamientos que hace varios años animaron a este foro sobre la vida urbana:

> En su esencia, este caso trata de uno de los valores más preciados de la vida civilizada: la vivienda, que sin ser fastuosa, sea tranquila, serena y agradable; el hogar en el cual el ser humano busca tranquilidad espiritual y física luego de un día gastado en la lucha económica de la sociedad industrial contemporánea. *Torres* v. *Rodríguez,* 101 D.P.R. 177, 178 (1973).

### I

Revisamos la sentencia del Tribunal Superior, Sala de San Juan, que desestima una petición de entredicho provisional e *injunction* permanente incoada por el Sr. Naím Merheb contra su vecino inmediato, Dr. Eliezer Benero Natal, por perturbarle la tranquilidad de su hogar y violar las normas mínimas de convivencia urbana.

En su demanda el señor Merheb alegó que el doctor Benero Natal permitía la acumulación descontrolada de los excrementos de sus perros que producían peste, atraían moscas y mimes, e impedía el pleno uso y disfrute de la

propiedad de los demandantes. Sus acercamientos para solucionar esta situación han sido infructuosos.

El tribunal de instancia desestimó. Concluyó que el recurso de *injunction* no·era el instrumento más adecuado para resolver esta controversia vecinal, y que el señor Merheb tenía otros remedios administrativos disponibles para solucionarlo. Éste oportunamente solicitó reconsideración. En un extenso y documentado escrito relacionó todos los esfuerzos infructuosos realizados para obtener ayuda de la División de Salud Ambiental del Departamento de Salud y de la División de Maltrato de Animales del Departamento de Salud Ambiental del Municipio de San Juan. El tribunal se negó a reconsiderar, aunque expresamente hizo la siguiente reserva jurisdiccional: "que de no obtener la parte demandante un remedio adecuado a través del mecanismo de la Ley [sobre Controversias y] Estados Provisionales de Derech[o] y *así justificado debidamente* el tribunal decretaría la reapertura del caso". Apéndice, pág. 31.

Ante nos el señor Merheb señala que constituyó un abuso de discreción "al desestimar la causa de acción sin siquiera recibir evidencia sobre adecuacidad del recurso, obligando a los demandantes-recurrentes a continuar sufriendo la violación de su derecho a la intimidad". Escrito de revisión, pág. 6. En vista de la naturaleza del planteamiento, procedemos a resolver prontamente la disposición del recurso conforme con las disposiciones de la Regla 50 de este Tribunal, 4 L.P.R.A. Ap. I-A.

II

Compartimos la preocupación del ilustrado foro de instancia de que los tribunales deben evitar que "en una sociedad como la nuestra con un apetito voraz por la litigación el remedio [del] *injunction* [se] ... conv[ierta] en un remedio ordinario". Apéndice, pág. 30. La premisa

subyacente es que deben agotarse las vías administrativas. Sin embargo, advertimos que dicho foro remitió el asunto a la vía judicial —Ley sobre Controversias y Estados Provisionales de Derecho, 32 L.P.R.A. sec. 2871 y ss.— y no administrativo. Aclarado este extremo, en las circunstancias particulares del caso, resolvemos que no debió desestimar la causa de acción *sin la celebración de vista.* El examen cuidadoso de los documentos incluidos con el recurso revela intensamente la gravedad del problema, según percibido por la familia del señor Merheb. Han sido en vano los esfuerzos realizados ante los gobiernos municipales y estatales para resolver el problema de salud causado por la putrefacción de excrementos de perros acumulados por meses. La existencia de otras posibles soluciones administrativas no desnaturaliza la gravedad del alegado estorbo y la pronta intervención del tribunal.

Bajo el estado de derecho vigente, cuando se sufre una perturbación del derecho del disfrute del hogar, puede recurrirse al foro judicial al amparo del Art. 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2761. Este precepto confiere expresamente a los ciudadanos una alternativa para solicitar y obtener un *injunction* con el propósito de eliminar un estorbo público. Así, en el pasado, hemos recurrido al *injunction* como instrumento eficaz contra estorbos para eliminar o aminorar la perturbación causada por malos olores, ruidos u otros problemas similares. *Torres* v. *Rodríguez,* supra; *Ortega Cabrera* v. *Tribunal Superior,* 101 D.P.R. 612 (1973); *Figueroa Velázquez* v. *A.A.A.,* 99 D.P.R. 105 (1970); *Fuentes* v. *Gulf,* 91 D.P.R. 559 (1964); *Casiano Sales* v. *Lozada Torres,* 91 D.P.R. 488 (1964); *Arcelay* v. *Sánchez,* 77 D.P.R. 824 (1955). Como tal, lo hemos avalado al caracterizarlo de importante remedio para "salvaguardar el derecho a la propiedad, la seguridad y la salud de los ciudadanos, derechos tan fundamentales que sólo deben ser interferidos por una razón

mayor de estado". Véase H. Colón Cruz, *Notas sobre Recursos Extraordinarios*, 42 Rev. C. Abo. P.R. 445, 450 (1981).

La existencia de otros remedios en ley no impide que se expida un auto de *injunction* cuando esos otros no son rápidos o adecuados para evitar el daño sufrido. Después de todo, los "tribunales debemos facilitar en todo lo posible, dentro de la ley, el que tanto el Estado como las personas particulares puedan hacer efectivas las disposiciones civilizadoras de urbanismos". *Torres* v. *Rodríguez*, supra, pág. 185. Como contraparte, el derecho a recurrir a una acción de *injunction* para salvaguardar el disfrute de la tranquilidad del hogar sólo debe ser derrotado por la existencia de un "remedio adecuado, rápido y eficaz". *Torres* v. *Rodríguez*, supra, pág. 184. Y ciertamente, un remedio legal no es adecuado si la parte perjudicada ha de sufrir un daño al obligársele a utilizar una vía ordinaria no empece a que finalmente prevalezca. Véase Colón Cruz, *op. cit.*, pág. 448.

### III

En su resolución el tribunal de instancia denegó el auto de *injunction* por entender que el remedio adecuado para la reclamación se encuentra en la Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974, *supra*. La exposición de motivos de esta ley señala que "está inspirada en proveer a la ciudadanía un mecanismo legal adecuado que le permita acudir a los tribunales para obtener la solución inmediata de ciertas controversias, superando los inconvenientes de los procedimientos clásicos que proveen las leyes ordinarias". 1974 Leyes de Puerto Rico 692. Estas controversias incluyen aquellas basadas en estorbos que puedan dar base a acciones bajo la Ley sobre Perturbación o Estorbo, 32 L.P.R.A. secs.

2761 y 2872(J). Sin embargo, el Art. 2 de esta ley sólo faculta a los magistrados "a resolver *provisionalmente* controversias". (Énfasis suplido.) 32 L.P.R.A. sec. 2872.

Desde esta perspectiva, si se aceptan como ciertas las alegaciones de la demanda, notamos que el estorbo que origina la controversia comenzó en noviembre de 1985. Desde entonces se alega que se han llevado a cabo múltiples intentos para solucionarlo. Aunque de ordinario, los conflictos vecinales deben primero dilucidarse en los foros administrativos y mediante la Ley sobre Controversias y Estados Provisionales de Derecho, las condiciones de salubridad y pestilencia que alegadamente afectan la tranquilidad hogareña de la familia Merheb requieren la atención inmediata de los tribunales vía la consideración en sus méritos del recurso instado. Así cumplimos con nuestra obligación ineludible de garantizar a los ciudadanos un foro justo e imparcial para resolver sus diferencias.

Por los fundamentos expuestos, se expide el auto, se revoca el dictamen del tribunal de instancia y devuelve el caso a dicho foro para que éste asuma jurisdicción, y a la mayor brevedad posible resuelva en sus méritos su procedencia.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Alonso Alonso disiente y de acuerdo con los términos prescritos en la Regla 4(b) del Tribunal Supremo, 4 L.P.R.A. Ap. I-A, emitirá su opinión por escrito.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión disidente del Juez Asociado Señor Alonso Alonso.

Respetuosamente disiento.

Mediante una sentencia dictada al amparo de la Regla 50 de este Tribunal, 4 L.P.R.A. Ap. I-A, se revoca al tribunal de instancia y se devuelve el caso para que asuma jurisdicción y, a la mayor brevedad posible, resuelva en sus méritos su procedencia. Se trata de una sentencia que no establece precedente. Resuelve una controversia particular ante nos. Sostengo que debió canalizarse mediante el método alterno disponible para resolver disputas, como lo hizo el tribunal de instancia. La necesidad de explorar y coordinar con determinación y firmeza medidas innovadoras y creativas, tendientes a mejorar la administración de la justicia, así lo justifican.

A simple vista, algunos podrán interpretar que se trata de una controversia en que se desea hacer justicia individual al conceder una vista judicial. El asunto es mucho más profundo. No se trata de si los recurrentes deben tener la oportunidad de una vista en los tribunales, sino *dónde y mediante qué procedimiento la deben tener.*

El tribunal de instancia dejó abiertas sus puertas a los recurrentes para que luego de agotados otros remedios existentes en el sistema judicial recurrieran a él nuevamente, de ser ello necesario. Al así hacerlo canalizó adecuadamente la controversia sin abdicar su misión fundamental de hacer justicia, sin debilitar el recurso extraordinario de *injunction,* y dar cumplimiento a la política pública existente sobre la utilización de métodos alternos para resolver disputas.

La controversia ante nos debe ser examinada no sólo desde la perspectiva de hacer justicia a unas partes en particular, sino también desde la perspectiva más amplia

de cómo el sistema de administración de justicia en general puede continuar su función de impartir justicia eficientemente en una sociedad cada vez más litigiosa y con crecientes tipos de controversias. El tribunal de instancia actuó correctamente al armonizar ambas perspectivas.

Para que la justicia individual siempre aflore y no se marchiten las expectativas que sobre nuestros tribunales tienen los ciudadanos —al abrir así brechas de credibilidad sobre las instituciones encargadas de impartirla— es necesario no sólo fortalecer en forma creadora e imaginativa el funcionamiento de nuestro sistema de tribunales, sino también fortalecer y ampliar los métodos alternos para resolver disputas.

I

La compleja sociedad urbana donde vivimos nos plantea diariamente innumerables situaciones que para cada ser humano resultan controversiales. Desde una perspectiva más amplia, la situación de nuestros valores fundamentales, nuestras relaciones interpersonales, el contorno familiar y socioeconómico en el cual nos desenvolvemos, unido a características peculiares de nuestra sociedad contemporánea donde la solidaridad social y el humanismo parecen estar en entredicho, crea nuevos y más conflictos entre los seres humanos. Así lo reconocimos en *Torres* v. *Rodríguez*, 101 D.P.R. 177 (1973). Ello le impone grandes retos a los tribunales.

Como bien articulara el Informe del Secretariado de la Conferencia Judicial sobre Métodos Alternos para la Solución de Disputas, Tribunal Supremo de P.R., octubre de 1980, pág. 1:

Una de las consecuencias ineludibles de la vida en sociedad es el surgimiento de conflictos y disputas entre los seres humanos. A medida que la sociedad crece y las relaciones entre sus integrantes se multiplican y se tornan más

complicadas proliferan las situaciones discordantes.. Los nuevos desarrollos tecnológicos, los cambios en las relaciones económicas, y el creciente contacto que el urbanismo desenfrenado nos impone, aumentan considerablemente las ocasiones que dan lugar a controversias.

Por ser vital a la propia subsistencia de la convivencia social, resulta imprescindible que la sociedad desarrolle mecanismos apropiados para resolver los conflictos entre sus integrantes. El gran número de éstos y la importancia que tiene para cada persona la solución sátisfactoria del problema que le aqueja, reclaman la atención más cuidadosa por parte del Estado.

Dicho informe luego de analizar los sistemas existentes en países como Inglaterra, Alemania, Italia, Israel, Arabia Saudita, Japón, Suiza, Suecia y Estados Unidos recomendó enérgicamente la adopción y uso de métodos alternos para solucionar disputas. Informe del Secretariado, *supra*, págs. 1–6.

El informe final del Council on the Role of Courts, *The Role of Courts in American Society*, Nueva York, West Pub. Co., 1984, ha descrito la situación como una en que los tribunales están compelidos a atender múltiples tipos de disputas que anteriormente eran atendidas por otras instituciones sociales. Íd., pág. 1. Sostuvo que las decisiones de los tribunales tendían a "legalizar" y "judicializar" la sociedad. Íd., pág. 3. Recomendó no sólo fortalecer los tribunales, sino también utilizar con más intensidad métodos alternos para solucionar disputas. Íd., págs. 9–11.

Una preocupación similar ha sido objeto de extenso análisis por distinguidos juristas. L. L. Fuller, *The Forms and Limits of Adjudication*, 92 Harv. L. Rev. 353 (1978); O. M. Fiss, *The Social and Political Foundations of Adjudication*, 6 L. & Hum. Behav. 121–128 (1982); M. Rosemberg, *Devising Procedures that are Civil to Promote Justice that is Civilized*, 69 Mich. L. Rev. 797 (1971); D. McGillis, *The Quiet (R) Evaluation in American Dispute*

*Settlement*, 31 Harv. L. Sch. Bull. 20 (1980); F. E. Sander, *Varieties of Dispute Processing*, 70 F.R.D. 79, 111–134 (1976).

La premisa subyacente de este enfoque tiene una trayectoria constante en la historia de la civilización: las reglas elementales de la interacción humana siempre han estado presentes en el tejido social. R. Unger Mangabeira, *Law in Modern Society*, Nueva York, Free Press, 1976.

## II

Desde 1974, la Comisión para el Estudio de los Tribunales del Consejo para la Reforma de la Justicia en Puerto Rico, consciente del creciente problema al que se enfrentaban los tribunales, recomendó medidas alternas para canalizar disputas.

La Asamblea Legislativa de Puerto Rico acogió una de sus recomendaciones y aprobó la Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974 (32 L.P.R.A. sec. 2871 y ss.).

En su exposición de motivos el legislador plasmó con claridad meridiana el propósito de dicha legislación. Expresó lo siguiente:

> *El propósito de esta legislación es establecer un procedimiento de ley rápido, económico y eficiente para la adjudicación provisional de controversias por los Jueces Municipales y los Jueces de Distrito.*
>
> *La ley está inspirada en proveer a la ciudadanía un mecanismo legal adecuado que le permita acudir a los tribunales para obtener la solución inmediata de ciertas controversias, superando los inconvenientes de los procedimientos clásicos que proveen las leyes ordinarias, que aunque eficientes en su alcance final, resultan costosos, complicados, tardíos y en la mayoría de las ocasiones, carentes de efectos profilácticos y mitigadores durante su tramitación.*

Esta ley crea un procedimiento sencillo y rápido facultando a los Jueces Municipales y Jueces de Distrito, donde no hubiese disponible un Juez Municipal, a establecer en ciertos asuntos estados provisionales de derecho, fijando y determinando las relaciones y derechos de las partes envueltas. Tal determinación no constituiría cosa juzgada ni impediría su ventilación mediante los cursos ordinarios de ley.

*Como pieza legislativa de vanguardia jurídico-social, rompe con las cadenas y fórmulas tradicionales,* haciendo accesible al pueblo de Puerto Rico el sistema-de justicia en la forma y manera más directa y eficiente compatible con los principios básicos contenidos en la Constitución del Estado Libre Asociado de Puerto Rico. La experiencia permitirá su extensión o limitación en el futuro. (Énfasis suplido.) 1974 Leyes de Puerto Rico 692–694.

Dicha ley fue enmendada en 1980 precisamente para adicionar, entre otros, el inciso (J) de la Sec. 2872, el cual claramente provee sobre el tipo de controversia que nos ocupa al disponer que podrán atenderse al amparo de ella las siguientes controversias:

(J) Controversias en las cuales se alegue la existencia de perturbaciones que fueren perjudiciales a la salud o a los sentidos, o que interrumpa[n] el libre uso de la propiedad, de modo que impida[n] el cómodo goce de la vida o de los bienes, de las que dan lugar a una acción bajo la sec. 2761 de este título, conocida como Ley sobre Perturbación o Estorbo. 32 L.P.R.A. sec. 2872(J).

Es precisamente al amparo de la Ley sobre Perturbación o Estorbo, 32 L.P.R.A. sec. 2761, que se presentó el recurso de *injunction* en el caso de autos y que el tribunal de instancia canalizó procesalmente mediante la Ley sobre Controversias y Estados Provisionales de Derecho, *supra.*

El Informe del Secretariado de la Conferencia Judicial, *supra,* pág. 91, al evaluar dicha ley en 1980 concluyó que mediante la Ley Núm. 140, *supra,* la experiencia habida demostraba dos cosas: *"su efectividad* y la propensidad [*sic*]

a enmendar el articulado de la ley que dispone que las controversias que se puedan adjudicar provisionalmente para ampliar su ámbito". (Énfasis suplido.)

Más reciente aún, la Ley Núm. 19 de 22 de septiembre de 1983 (4 L.P.R.A. sec. 1551 y ss.) autorizó el establecimiento de programas o centros que sirvan como foros informales para la resolución de determinadas disputas y conflictos que surgen entre ciudadanos. En su exposición de motivos se expresó claramente una política pública endosada por la Rama Judicial.

> Los mecanismos convencionales para dirimir y resolver los conflictos que surgen entre los ciudadanos resultan inadecuados para procesar disputas y controversias menores. Ello debido en parte al costo económico que acarrea utilizar el sistema tradicional, a la complejidad y lentitud de los procedimientos ordinarios, a los inconvenientes que ocasiona el acudir a solucionar estos conflictos en sitios y horas inaccesibles y al impacto negativo que ocasiona en la ciudadanía los procedimientos adjudicativos formales en ciertas disputas.
>
> *Por ello debe promoverse el desarrollo de mecanismos alternos informales para la resolución de disputas menores de forma que la ciudadanía cuente con foros efectivos, accesibles y económicos para su resolución.*
>
> Es necesario, además, que se fomente la participación ciudadana en el proceso de resolución de disputas. La ciudadanía constituye una poderosa fuente de reserva que de utilizarse para la solución de ciertos asuntos sin tener que recurrir al proceso judicial permitiría reducir la carga de trabajo de jueces, los fiscales, los policías y otros funcionarios públicos. (Énfasis suplido.) 1983 Leyes de Puerto Rico 422-423.

La Ley Núm. 20 de 26 de mayo de 1982 (4 L.P.R.A. sec. 213) autorizó a los Jueces Municipales a adjudicar provisionalmente controversias con sujeción a lo dispuesto en otras leyes sobre controversias provisionales de derecho.

Existe, pues, una clara política pública del Estado para canalizar controversias como la de autos dentro del propio sistema judicial.

Dicha política pública hay que instrumentarla con determinación y voluntad para enfrentarnos a la realidad que pone al relieve los datos siguientes:

Al 30 de junio de 1986 el número de casos presentados en el Tribunal de Primera Instancia fue de 268,457, mientras que en el mismo mes del año anterior fue de 249,148. Ello representa un aumento neto en un año de 19,309 (6.1%) casos presentados. Mensaje sobre el Estado de la Judicatura presentado a la Décimo-tercera Conferencia Judicial del Tribunal Supremo de Puerto Rico por el Juez Presidente Hon. Víctor M. Pons Núñez el 11 de diciembre de 1986, pág. 3.

## III

Con esta perspectiva examinemos lo que hizo el tribunal de instancia en el caso que nos ocupa.

Si se aceptan como ciertas las alegaciones de la demanda, la controversia comenzó en noviembre de 1985 y no es sino hasta el *14 de mayo de 1987*, año y medio después, que los recurrentes presentan su demanda de *injunction*. Examinada la misma por el tribunal, ésta fue desestimada el 19 de mayo de 1987. Posteriormente el tribunal le brindó a los recurrentes la oportunidad de que demostraran el por qué la Ley sobre Controversias y Estados Provisionales de Derecho, *supra*, y otros remedios no eran adecuados. Examinado el escrito de los recurrentes sobre el particular, el tribunal, el 24 de agosto de 1987, emitió una resolución que en su parte pertinente dispone:

Si bien es cierto, que la parte demandante hace alegaciones que podrían indicar que el remedio ante el programa de Salud Ambiental podría no ser adecuado, *no nos indica* [*por*

*qué] el remedio que provee la Ley [sobre Controversias y] Estados Provisionales de Derech[o] no es un remedio más adecuado para atender el problema vecinal que presenta el presente [sic] caso.* Por el contrario el Tribunal considera que dicha ley, según enmendada, fue la respuesta legislativa a las situaciones como la presente. *Nuestra experiencia es que los procedimientos a tenor con dicha ley tienen informalidad, agilidad y adecuacidad suficientes para entender en problemas entre vecinos mejor que cualquier otro procedimiento.*

Los jueces encargados de administrar la ley de referencia en esta jurisdicción están asistidos por el Centro de Solución de Disputas, el cual provee, a través de conciliadores, los mecanismos para lograr una paz social entre vecinos que ninguna adjudicación puede lograr.

En base a lo anterior, el Tribunal mantiene en todo vigor la sentencia de 19 de mayo de 1987. *No obstante, expresamente se dispone que de no obtener la parte demandante un remedio adecuado a través del mecanismo de la Ley [sobre Controversias y] Estados Provisionales de Derech[o] y así justificarlo debidamente el Tribunal decretaría la reapertura del presente caso.* (Énfasis suplido.) Apéndice, págs. 30-31.

Los recurrentes en vez de utilizar la Ley sobre Controversias y Estados Provisionales de Derecho, *supra,* según lo indicó el tribunal de instancia, optaron por recurrir ante nos.

Debe destacarse que el tribunal de instancia no se negó a entender permanentemente en la controversia, sino que retuvo jurisdicción sobre la misma, y expresamente dictaminó que de no obtener los recurrentes un remedio adecuado al amparo de la Ley Núm. 140, *supra,* decretaría la apertura del caso.

Se debe subrayar, además, que el tribunal refirió la controversia a otro foro judicial y no a foros administrativos como lo hizo en el caso de *Torres* v. *Rodríguez,* supra. Las puertas de los tribunales no se le cerraron a los recurrentes.

El remedio extraordinario de *injunction*, en una sociedad cada vez más litigiosa, no se debe convertir en un remedio mandatorio para atender todas las controversias emergentes relativas a la calidad de vida, particularmente cuando existen otros remedios judiciales especialmente diseñados para ello. Hacerlo convierte el recurso en uno ordinario, lo debilita, le resta rapidez, agilidad y eficacia.

Hay que subrayar que el tribunal de instancia no declinó su responsabilidad ni debilitó el enérgico brazo del *injunction*, sino que dentro del mismo sistema de tribunales canalizó la controversia al dejar abiertas sus puertas para el futuro. Al así hacerlo hizo justicia individual y no sobrecargó innecesariamente el uso de los recursos extraordinarios.

Como epílogo, todos los que estamos interesados en mejorar cada día más nuestro sistema de administración de justicia, tenemos que estar dispuestos a explorar y llevar a cabo maneras de adjudicar nuevos tipos de controversias para atender situaciones cada vez más complejas. La sociedad contemporánea lo requiere. El sistema judicial debe responder al reto en forma afirmativa.